NO. _____

**IN THE COURT OF CRIMINAL APPEALS**

**STATE OF TEXAS**

**ANDRES ALFREDO SEGOVIA,**

**PETITIONER**

**VS.**

**THE STATE OF TEXAS,**

**RESPONDENT**

_____

**PETITION IN CAUSE NUMBER 04-14-00367-CR
APPEALED FROM THE 399TH JUDICIAL DISTRICT COURT
OF BEXAR COUNTY, TEXAS AND THE COURT OF APPEALS
FOR THE FOURTH SUPREME JUDICIAL DISTRICT OF TEXAS**

_____

**PETITION FOR DISCRETIONARY REVIEW**

_____

**BARRY P. HITCHINGS
645 South Presa
San Antonio, Texas 78210
(210) 224-1433
(210) 224-4840 (telecopier)
hpb@stic.net**

**ATTORNEY FOR PETITIONER**
**State Bar No. 09723600**

# IDENTITY OF PARTIES, COUNSEL AND JUDGES

APPELLANT/PETITIONER:   **Andres Alfredo Segovia**

TRIAL DEFENSE
ATTORNEYS:              **Mr. Tony Jimenez, III**
                        State Bar No. 10666800
                        214 Dwyer Avenue, Suite 315
                        San Antonio, Texas 78204
                        (210) 225-0777

                        **Ms. Catherine Valenzuela**
                        State Bar No. 788575
                        P.O. Box 780395
                        San Antonio, Texas 78278
                        (210) 382-4335

TRIAL PROSECUTORS:      **Mr. Steven Speir**
                        State Bar No.  24047633

                        **Ms. Julie Wright**
                        State Bar No. 00788722

                        Assistant Criminal District Attorneys
                        Paul Elizondo Tower
                        101 W. Nueva, 4th Floor
                        San Antonio, Texas 78205
                        (210) 335-2377

APPELLATE DEFENSE
ATTORNEY:               **Barry P. Hitchings**
                        State Bar No. 09723600
                        645 South Presa
                        San Antonio, Texas 78210
                        (210) 224-1433
                        (210) 224-4840 (fax)

APPELLATE STATE'S
ATTORNEY:               **Nathan E. Morey**
                        State Bar No. 24074756
                        Assistant Criminal District Attorney
                        Paul Elizondo Tower
                        101 W. Nueva, Suite 370
                        San Antonio, Texas 78205
                        (210) 335-2414
                        (210) 335-2436

TRIAL JUDGE: **Judge Ray J. Olivarri, Jr.**
399th District Court
Bexar County Justice Center
300 Dolorosa
San Antonio, Texas 78205

**Judge George Godwin**
Senior Retired Judge
Sitting for the 299th District Court
300 Dolorosa
San Antonio, Texas 78205
(At Punishment Hearing)

APPELLATE JUSTICES: **Patricia O. Alvarez**
**Luz Elena D. Chapa**
**Jason Pulliam**

# TABLE OF CONTENTS

IDENTITY OF PARTIES, COUNSEL AND JUDGES . . . . . . . . . . . . . . . . . ii-iii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . 2

GROUNDS FOR REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      1.   The Court of Appeals erred in holding that a "sudden passion arising from an adequate cause" instruction is never warranted in a murder conviction in which a defendant admits to two (2) prior felony convictions

      2.   The Court of Appeals erred in holding that the trial court did not abuse its discretion in failing to solicit a plea on the State's enhancement allegations requiring the State to prove each enhancement allegation beyond a reasonable doubt and without a plea of true, then instructing the jury that "you will find" the enhancement allegations to be true

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-15

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# INDEX OF AUTHORITIES

**TEXAS CASES**                                                                      **Page(s)**

<u>Bell  v. State</u>, 994 S.W. 2d 173 (Tex. Crim. App. 1999). . . . . . . . . . . . . . . . . . . . 14

<u>Cornett  v. State</u>, 405 S.W.3d 752 (Tex.App.–Houston [1ˢᵗ Dist.] 2013, *pet.ref'd*) 8-9

<u>Daniels v. State</u>, 645 S.W.2d 459 (Tex. Crim. App. 1983) . . . . . . . . . . . . . . . . . 6-7

<u>Mims v. State</u>, 3 S.W.3d 923 (Tex. Crim. App. 1999) . . . . . . . . . . . . . . . . . . . . 1, 7

<u>Roberts v. State</u>, 321 S.W. 3d 545 (Tex.App.–Houston [14ᵗʰ Dist.]2010 *pet.*
   *ref'd*). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

<u>State v. Mancuso</u>, 919 S.W.2d 86 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . . 10-12

<u>Trevino v. State</u>, 100 S.W.3d 232 (Tex. Crim. App. 2003) . . . . . . . . . . . . . . . . 1, 7

<u>Washington v. State</u>, 677 S.W. 2d 524 (Tex. Crim. App. 1984) *overruled*
   *on other grounds* <u>Bell v. State</u>, 994 S.W.2d 173 Tex.Crim.App. 1999) .14-15

<u>Wooten v. State</u>, 400 S.W.3d 601 (Tex. Crim. App. 2013) . . . . . . . . . . . . . . . 1, 6-7


**TEXAS STATUTES AND CODES**

TEX. PENAL CODE ANN. § 12.35 (Vernon 2013) . . . . . . . . . . . . . . . . . . .  10, 12

TEX. PENAL CODE ANN. § 12.42 (Vernon 2013) . . . . . . . . . . . . . . . 1, 4-5,10,12

TEX. PENAL CODE ANN. § 19.02 (Vernon 2013). . . . . . . . . . . . . . . . . . . . . . 1, 4

TEX. GOV'T CODE ANN. § 311.021 (Vernon 1995) . . . . . . . . . . . . . . . . . 10, 11

TEX. GOV'T CODE ANN. § 311.026 (Vernon 1995) . . . . . . . . . . . . . . . . . . . . 11

**Statement Regarding Oral Argument**

Oral argument is requested in this case since as the Fourth Texas Court of Appeals' ruling in the Petitioner's case notes — "[i]n this case of first impression, we are asked to determine whether a defendant who presents evidence on the statutory requirements of the requested instruction, but is prohibited from receiving the statutory benefit of the requested instruction, is entitled to the instruction." (Appendix: Fourth Court of Appeals opinion at page 18). The Texas Court of Criminal Appeals has ruled that the Section 19.02 Texas Penal Code (Murder requiring a sudden passion charge if raised by the evidence) charge should be given to a jury if raised by the evidence. Wooten v. State, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013); Trevino v. State, 100 S.W.3d 232, 238 (Tex. Crim. App. 2003); Mims v. State, 3 S.W.3d 923, 928 (Tex. Crim. App. 1999). However, Wooten, Trevino and Mims did not involve the issue of reconciling Section 19.02 of the Texas Penal Code with Section 12.42 (d) (Habitual Felony) of the Texas Penal Code. This case represents a conflict between Sections 19.02 and 12.42 (d) of the Texas Penal Code.

**Statement of the Case**

Petitioner was charged by indictment with the offense of Murder. (CR-8). The State subsequently filed a "Notice of Intent to Use Two Prior Convictions for Enhancement of Punishment." (CR-52-53). Petitioner filed an "Election of

1

Punishment" in which he requested "that the jury assess the punishment in this case in the event the jury finds the defendant guilty." (CR-65). A jury found the Petitioner guilty of murder. (CR-79). The jury assessed punishment for fifty-five (55) years in the Institutional Division of the Texas Department of Criminal Justice. (CR 92-93). The trial court judge signed a Trial Court's Certification of Defendant's Right to Appeal on May 6, 2014. (CR-95). Petitioner timely filed a "Notice of Appeal" including an additional "Trial Court's Certification of Defendant's Right of Appeal" on May 22, 2014. (CR 100-101). On April 29, 2015, the Fourth Court of Appeals issued an opinion affirming the ruling of the trial court. (See Appendix).

## Statement of Procedural History

On April 29, 2015, the Fourth Court of Appeals issued an opinion affirming the ruling of the trial court. (See Appendix). No Motion for Rehearing was filed.

## Ground for Review

1. The Court of Appeals erred in holding that a "sudden passion arising from an adequate cause" instruction is never warranted in a murder conviction in which a defendant admits to two (2) prior felony convictions

2. The Court of Appeals erred in holding that the trial court did not abuse its discretion in failing to solicit a plea on the State's enhancement allegations requiring the State to prove each enhancement allegation beyond a reasonable doubt and without a plea of true, then instructing the jury that "you will find" the enhancement allegations to be true

2

## Argument

In its April 29, 2015 Opinion, the Fourth Court of Appeals discussed the facts and law relating to Petitioner's Grounds for Review numbers 1 and 2 under the heading of "Punishment Charge" on pages 14 through 23 of its opinion. (See Appendix). The Opinion of the Fourth Court of Appeals notes that Petitioner claims that the trial court's charge contained two (2) errors: "(1) failure to include a sudden passion instruction and (2) instructing the jury that 'you will find' rather than 'if you find' on the habitual offender instruction." (Appendix, Fourth Court of Appeals Opinion at page 14).

## Lack of a Sudden Passion Charge

At the conclusion of the testimony at the punishment phase of the trial, the trial court conducted a charge conference regarding the Charge of the Court on Punishment. (RR. 7, pp. 190-196). Petitioner had submitted a "Defendant's Special Requested Charge #1" requesting the trial court to issue instructions to the jury on the issue of "whether the [Petitioner] caused the death under the immediate influence of sudden passion arising from an adequate cause" based upon the provisions of Section 19.02 of the Texas Penal Code. (CR 80-82). The trial court judge noted that since the Petitioner admitted to two prior felony convictions at punishment requiring a

3

punishment range between 25 to 99 years imprisonment pursuant to Texas Penal Code Section 12.42 (d) the trial court would deny Petitioner's request for a Section 19.02 charge on "sudden passion arising from an adequate cause." (RR. Vol 7, p. 193).

Petitioner's trial attorney subsequently re-urged the sudden passion instruction and argued that:

> MR. JIMENEZ: . . . . I want to reurge it on the grounds that my client has a right to present a complete defense on his behalf including punishment. In this particular instance, a complete defense would include the passion, the heat of passion instruction. We're making that request now under the Sixth and Fourteenth Amendments of the United States Constitution. That also impact, Your Honor, the right to effective representation of counsel under the Sixth Amendment.

(RR. 8, p. 5). However, the trial judge responded by informing Petitioner's attorney that his objection on the lack of a sudden passion instruction "will be overruled once again." (RR. 8, p. 6).

Texas Penal Code § 19.02 (entitled "Murder") provides in part:

> (a) In this section:
>      (1) "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.
>      (2) "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of

4

the offense and is not solely the result of former provocation.

(b) A person commits an offense if he:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.

[c] Except as provided by Subsection (d), an offense under this section is a felony of the first degree.

(d) At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.

Texas Penal Code § 12.42 (entitled "Penalties for Repeat and Habitual Felony Offenders on Trial for First, Second or Third Degree Felony") provides in part:

(d) . . . . if it is shown on the trial of a felony offense other than a state jail felony punishable under section 12.35 (a) that the defendant has previously been finally convicted if two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years. . . .

In Petitioner's case, the Petitioner was indicted for the First Degree offense of Murder. (CR 8). The State also filed a "Notice of Intent to Use Two Prior Convictions for Enhancement of Punishment." (CR 52-53). On appeal before the Fourth Court of Appeals, the State in the State's Brief recited that "the State does not

5

dispute that Appellant introduced sufficient evidence that raised the defensive issue of 'sudden passion.'" (State's Brief to the Fourth Court of Appeals at page 18).

In Wooten v. State, after the jury rejected a murder defendant's self defense claim, the trial court denied the murder defendant's request for a sudden passion charge at punishment in which the murder defendant claimed that "once the shooting began, that he was overwhelmed by emotions of fear, disorientation, confusion. . . ." 400 SW3d 601, 604 (Tex. Crim. App. 2013). In reversing the court of appeals, the Court of Criminal Appeals in Wooten ruled that:

> [t]o justify a jury instruction on the issue of sudden passion at the punishment phase, the record must at least minimally support an inference: 1) that the defendant in fact acted under the immediate influence of a passion such as terror, anger, rage, or resentment; 2) that his sudden passion was in fact induced by some provocation by the deceased or another acting with him, which provocation would commonly produce such a passion in a person of ordinary temper; 3) that he committed the murder before regaining his capacity for cool reflection; and 4) that a causal connection existed "between the provocation, passion, and homicide." It does not matter that the evidence supporting the submission of a sudden passion instruction may be weak, impeached, contradicted, or unbelievable. If the evidence thus raises the issue from any source, during either phase of trial, then the defendant has satisfied his burden of production, and **the trial court must submit the issue in the jury charge – at least if the defendant requests it.**

Id. at 605 (Emphasis Added). However, after conducting a harm analysis, the Court of Criminal Appeals in Wooten citing Daniels v. State noted that "'a bare claim of'

6

fear will not necessarily support a claim of sudden passion, but that fear that 'rises to the level of terror' will suffice (if the cause is adequate)" to invoke a sudden passion instruction. Wooten at 607 *citing* Daniels, 645 S.W.2d 459, 460 (Tex. Crim. App. 1983). The Court of Criminal Appeals in Wooten then concluded that:

> whatever error the trial court may have committed by failing to charge the jury with respect to sudden passion did not harm the appellant. Finding our harm analysis thus dispositive, we need not address whether the trial court did, in fact, err not to include the instruction.

Id. at 607.

Earlier Texas Court of Criminal Appeals' rulings in Trevino v. State ("sudden passion charge should be given if there is some evidence to support it, even if that evidence is weak, impeached, contradicted or unbelievable") and Mims v. State ("if raised by the evidence, the sudden passion issue should be submitted in the punishment phase of an attempted murder prosecution") support giving a "sudden passion" charge if supported by the evidence. Trevino, 100 S.W.3d 232, 238 (Tex. Crim. App. 2003); Mims, 3 S.W.3d 923, 928 (Tex. Crim. App. 1999). Since an attempted murder defendant (in which attempted murder would be a second degree felony) would be entitled to a "sudden passion arising from an adequate charge" instruction in Mims, the offense would remain a second degree felony even though Mims would get the benefit of the mitigation charge of "sudden passion arising from

7

an adequate cause." Thus a "sudden passion arising from an adequate charge" instruction would serve the dual purpose of (1) a charge reduction and/or (2) a mitigation instruction.

Although briefed and argued to the Fourth Court of Appeals, the Fourth Court of Appeals should have followed the example of Cornett v. State, 405 S.W.3d 752, 754-756 (Tex.App.-Houston [1ˢᵗ Dist.] 2013, pet. ref'd). Cornett involved the three (3) factors in Petitioner Segovia's case, *i.e.* (1) a murder conviction; (2) a stipulation to two prior felony convictions; and (3) a request for a "sudden passion arising from an adequate cause" punishment instruction which the trial court judge in Cornett granted. Id. at 756.

The jury in Cornett sentenced the defendant to serve a sentence of forty-two (42) years confinement for a first degree murder. However, the sole issue before the 1ˢᵗ District Court of Appeals was **not** whether to give a "sudden passion arising from an adequate cause" instruction (since such a charge was given) **but whether** the punishment phase jury charge on the sudden passion special issue erroneously allowed the jury to return a non-unanimous verdict on the sudden passion issue. The 1ˢᵗ District Court of Appeals ruled that the jury instruction **improperly** "conditioned the first-degree felony punishment range on only a failure to find sudden passion unanimously rather than a unanimous negative finding on the issue." Id. at 760.

8

However, in its harm analysis, the 1ˢᵗ District Court of Appeals concluded that the erroneous punishment instruction on sudden passion (relating to "unanimity") did not cause the defendant egregious harm. Id at 754, 763.

There is no reference in the Fourth Court of Appeals' opinion in the Petitioner's case to the opinion in Cornett in which the Texas Court of Criminal Appeals denied discretionary review. Instead, the Fourth Court of Appeals appeared overly concerned that to give the "sudden passion" charge requested by defense counsel: (1) "could have potentially led jurors to believe that a penalty range was a possibility" and (2) "such a discrepancy in the charge could have potentially been misleading or allowed for some form of jury nullification." (Appendix, Fourth Court of Appeals opinion at page 18).

Applying, Cornett, the trial court judge should have: (1) granted Petitioner's "sudden passion arising from an adequate cause" jury instruction request; (2) instructed the jury that if they found "sudden passion arising from an adequate cause" the charge would then be reduced to a second degree felony with a range of punishment from 2 to 20 years imprisonment; and (3) further instructed the jury that if the jury found that the State had proved beyond a reasonable doubt that the defendant had twice before been convicted of non-state jail felonies then the range of punishment would be imprisonment in the Texas Department of Criminal Justice

9

for life, or for any term of not more than 99 years or less than 25 years. Such a charge would have given Petitioner Segovia his statutory entitlement to a "sudden passion arising from an adequate cause" charge and applied the Section 12.42 (d) Texas Penal Code habitual offender requirement of a range of punishment of life or not more than 99 years or less than 25 years. Instead, the Fourth Court of Appeals published opinion in Petitioner Segovia's case effectively now holds that in Texas a sudden passion instruction is never warranted in a murder conviction in which a defendant admits to two (2) prior felony convictions. Such a ruling now precludes murder defendants in Texas with two (2) prior felonies from using "sudden passion arising from an adequate cause" for either charge reduction or mitigation purposes.

The Fourth Court of Appeals could have resolved the apparent conflict between Texas Penal Code § 19.02 (Murder) and Texas Penal Code § 12.42 (d) (Habitual Felony Offenders) by following the logic of the Texas Court of Criminal Appeals in State v. Mancuso, 919 S.W.2d 86 (1996). In Mancuso, the Texas Court of Criminal Appeals:

> granted the State's petition for discretionary review to determine whether the Court of Appeals erred in holding the trial judge properly sentenced appellees under Tex.Penal Code Ann. § 12.35 and art. 42.12 § 15, rather than Tex.Penal Code Ann. § 12.42 (d)

In Mancuso, the Texas Court of Criminal Appeals construed Tex. Gov't Code §§s

10

311.021 (entitled "Intention in Enactment Statutes"); 311.023 (entitled "Statute

Construction Aids"); 311.026(a) and 311.026(b) (entitled "Special or Local Provision

Prevails over General"). In construing statutes the Texas Court of Criminal Appeals

noted:

> It is the duty of the Legislature to make laws, and it is the function of the Judiciary to interpret those laws. *Cites omitted*. When we interpret statutes we seek to effectuate the 'collective' intent or purpose of legislators who enacted the legislation. *Cites omitted*. Consequently, we focus on the text of the statute and interpret it in a literal manner attempting to discern the fair, objective meaning of the text. *Cites omitted*. It is our duty while interpreting the statute to give the ordinary and plain meaning to the language of the Legislature. *Cites omitted*. Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute. *Cites omitted*. Only when the application of a statute's plain language is ambiguous or would lead to absurd consequences which the Legislature could not possibly have intended, should we look to extratextual factors. *Cites omitted*. These extratextual factors include, but are not limited to executive and/or administrative interpretations, consequences of construction, goal of legislation, circumstances under which the statute was enacted and legislative history. *Cites omitted*. This exception to the general rule is not intended to, nor should it, intrude upon the lawmaking powers of the legislative branch and it should not be construed as an invasion of legislative authority. Failing an absurd consequence or ambiguous language this Court need not delve into the extratextual factors affecting a statute. *Cites omitted*. It is presumed in the enactment of a statute that the entire statute and all words in the statute are intended to be effective, and the language therein will create a just and reasonable result. *Cite omitted*. If a general provision conflicts with a specific provision, the provisions shall be construed, if

11

possible, so that effect is given to both. *Cites omitted*. If the statutes are unable to be reconciled, the specific statute will prevail as an exception to the general statute, unless the general statute is the later enactment and the manifest intent is that the general provision prevail. *Cite omitted*.

In Mancuso, then Art. 42.12 § 15 of the Texas Code of Criminal Procedure specifically provided for the enhancement of punishment for offenses under § 12.35(a) [State Jail Felonies] when there were two or more felony convictions and § 12.42 (d) of the Texas Penal Code providing for enhancements on the trial of a felony offense in which there were two prior felony convictions enhancing the punishment to life or not more than 99 years or less than 25 years. The State contended that § 12.42 (d) applied to all felonies, including state jail felonies. Id. at 89. Applying the statutory construction aids, the Texas Court of Criminal Appeals in Mancuso affirmed the Court of Appeals in ruling that state jail felonies could not be enhanced under § 12.42 (d) of the Texas Penal Code. Id. at 90. Section 12.42 (d) of the Texas Penal Code was amended after the Mancuso opinion to recite "on trial of a felony offense other than a state jail felony."

**Habitual Felony Offender Punishment Charge**

In its "Charge of the Court on Punishment" the trial court included a charge that instructed the Jury that — "You will find that the defendant has previously been finally convicted of two felony offenses, as alleged, and the second previous felony

12

conviction is for an offense that occurred subsequent to the first previous conviction having become final." (CR 87-88). The Petitioner's attorney objected to the "You will find" language and requested an instruction using the words – "If you find." (RR 8, pp. 4-6). Petitioner's trial attorney argued that the "You will find" instruction constituted "a comment on the weight of the evidence" by the trial court judge. (RR 8, pp. 4-6).

In its opinion, the Fourth Court of Appeals ruled that the trial court judge in Segovia committed error in submitting the "You will find" language in the Court's charge to the jury. (Appendix - Fourth Court of Appeals' Opinion at page 19). After reviewing the record on appeal, the Fourth Court concluded that in Petitioner Segovia's case "because there was no plea, the burden of proof rested on the State and the trial court's charge **usurped that burden**." *Id*. Accordingly, the charge was in error." (Appendix – Fourth Court of Appeals Opinion at page 19).

In its subsequent "harm analysis" the Fourth Court of Appeals relied on Roberts v. State, 321 S.W.3d 545 (Tex. App. – Houston [14th Dist.] 2010, *pet. ref'd*). In Roberts, the defendant's trial court attorney did not object to the punishment charge which instructed the jury to find each of four enhancement allegations true despite defendant Robert's plea of not true to one of the enhancement allegations. Id at 533. However, in Petitioner Segovia's case, his trial court attorney vigorously

13

objected to the trial court's charge of "You will find." (RR. 8, pp. 4-6). The Fourth

Court noted that the harm analysis in Roberts would focus on the issue of "egregious

harm" while the Segovia harm analysis would focus on "some harm" to require

reversal. (Appendix– Fourth Court of Appeals Opinion at p. 21). In Petitioner

Segovia's case the Fourth Court of Appeals concluded that – "Even assuming error,

the record does not support any finding of harm." Id. at 22.

Petitioner Segovia contends that the more analysis of the trial court's judge's

"You will find" jury charge instruction is in Washington v. State, 677 S.W.2d 524,

528-29 (Tex. Crim. App. 1984) *overruled on other grounds* Bell v. State, 994 S.W.2d

173, 175 (double jeopardy issues generally not applicable to noncapital sentencing

proceedings). In Washington, after a jury found a defendant guilty the trial court

judge immediately discharged the jury because the trial court judge found that the

defendant had "admitted to the truth of the enhancement allegations when he testified

at the guilt state of trial" and thus "there was no issue for the jury to resolve. Id. at

527. The Texas Court of Criminal Appeals concluded that the trial court judge in

Washington erred since "an accused person in Texas does have the statutory right to

have the jury assess his punishment." Id. The Texas Court of Criminal Appeals in

Washington concluded that:

even though appellant admitted when he testified to the alleged

14

prior felony convictions, nevertheless, a question of fact still existed that, because of his election, was to be **answered by the jury, and not the trial judge**.   .   .   .   The admission by the defendant does not warrant the trial judge taking the case from the jury, because the jury is still charged with the responsibility of determining guilt.   .   .   .   In dismissing the jury prematurely, the trial court deprived appellant of a valuable statutory right.

Id. at 529.

## **Prayer for Relief**

WHEREFORE, Petitioner prays that this Honorable Court of Criminal Appeals will grant this Petition for Discretionary Review. Petitioner further prays that upon reviewing the decision of the Fourth Court of Appeals, that this Court reverse the decision and enter a ruling reversing the judgment of the trial court and the Fourth Court of Appeals and remand this case for a new trial.

Respectfully submitted,

LAW OFFICES OF
HITCHINGS & POLLOCK
645 South Presa
San Antonio, Texas 78210
(210) 224-1433
(210) 224-4840 (telecopier)

By: /S/ Barry P. Hitchings
BARRY P. HITCHINGS
State Bar No. 09723600
ATTORNEYS FOR Petitioner

15

## CERTIFICATE OF COMPLIANCE

1.    This Petition for Discretionary Review complies with the type-volume limitation of TEX. R. APP. P. 9.4 (i)(1)(2)because this brief contains 4508 words, excluding parts of the brief exempted by TEX. R. APP. P. 9.4 (i)(1).

2.    This Petition for Discretionary Review complies with the typeface and type style requirements of TEX. R. APP. P. 9.4 (e) because this Petition for Discretionary Review has been prepared in a proportionally spaced typeface using Word Perfect X4 for Windows in 14 point font size and Times New Roman type style.

/S/ Barry P. Hitchings
BARRY P. HITCHINGS
Attorney for Appellant Andres Alfredo Segovia
Dated: May 29, 2015

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 29th day of May, 2015, a true and correct copy of this Petition for Discretionary Review was served by e-filing at nathan.morey@bexar.org and hand-delivered to the Bexar County Criminal District Attorneys Office, Paul Elizondo Tower, 101 W. Nueva Street, San Antonio, Texas 78205 and served upon the State Prosecuting Attorney, P.O. Box 12405, Austin, Texas 78711 by e-filing at information@spa.texas.gov.

/S/ Barry P. Hitchings
BARRY P. HITCHINGS

16

**APPENDIX**

# APPENDIX



# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-14-00367-CR

Andres Alfredo **SEGOVIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2012CR8592
Honorable Ray Olivarri, Judge Presiding[1]

Opinion by:    Patricia O. Alvarez, Justice

Sitting:      Patricia O. Alvarez, Justice
            Luz Elena D. Chapa, Justice
            Jason Pulliam, Justice

Delivered and Filed: April 29, 2015

AFFIRMED

Appellant Andres Alfredo Segovia was charged by indictment with the murder of Joel Flores; the State provided notice of intent to enhance Segovia's penalty with two prior felony convictions. The jury subsequently found Segovia guilty and assessed punishment at fifty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Segovia contends the trial court erred as follows: (1) denying the testimony of defense

---

[1] The Honorable Ray Olivarri presided over the guilt/innocence portion of the trial. The punishment phase was presided over by the Honorable George Godwin.

investigator Manuel Alfaro; (2) allowing the testimony of Bexar County Sheriff's Deputy Miguel Tena Mora; (3) failing to include a sudden passion instruction in the court's jury charge; and (4) instructing the jury "you will find" Segovia's enhancement allegations to be true. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Because whether Appellant Andres Alfredo Segovia shot and killed Joel Flores is not at issue, we need not provide an in-depth recitation of the facts.

The incident leading to Flores's death began earlier in June of 2012. Segovia and his girlfriend, Shannon Rodriguez, were at a bar when a fight ensued between Segovia and the Flores brothers. Segovia and the Flores brothers all lived in the same apartment complex. By his own admission, on June 8, 2012, Segovia came home from work, set out to find Joel Flores, and approached the Flores apartment with a bat. The testimony supports that Segovia screamed up at the apartment, but did not actually approach the apartment. Segovia ultimately left the area and returned to his apartment.

After several hours, Segovia returned to the parking area outside the Flores apartment and, from the parking lot, called up to Joel Flores. Instead of a bat, however, Segovia brought a .40 caliber firearm. A friend of Flores attempted to calm the situation, but things unraveled quickly and the friend soon found himself being used by Segovia as a shield. Flores and Segovia shot at each other. Flores died as a result of a gunshot wound.

Segovia was indicted for murder and the State filed a notice of intent to use two prior convictions for enhancement purposes. Segovia elected to have his case heard before a jury. After five days of trial, the jury convicted Segovia and ultimately assessed punishment at fifty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

On appeal, Segovia contends the trial court erred in allowing the State to present evidence that Segovia was affiliated with the Mexican Mafia and in excluding pictures of the crime scene taken by the defense. Segovia also contends the trial court erred in failing to include a sudden passion instruction in the jury charge on punishment; and, in the absence of a plea of true, the charge incorrectly directed the jury that "you will find," rather than "if you find," Segovia's enhancement allegations to be true.

We first address Segovia's evidentiary issues.

### ADMISSION OF EVIDENCE

Segovia contends the trial court erred in excluding the testimony of the defense investigator, Manuel Alfaro, and the pictures that Alfaro took of the crime scene. Segovia also argues the trial court erred in allowing the testimony of Bexar County Deputy Miguel Tena Mora regarding Segovia's gang affiliation.

We address each witness individually.

### A.     Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Sandoval v. State*, 409 S.W.3d 259, 297 (Tex. App.—Austin 2013, no pet.). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1991) (op. on reh'g); *accord Thompson v. State*, 274 S.W.3d 776, 778 (Tex. App.—San Antonio 2008, no pet.). When considering a trial court's decision to admit or exclude evidence, we will not reverse the ruling unless it falls outside the "zone of reasonable disagreement." *McGee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007); *see also Jessop v. State*, 368 S.W.3d 653, 686 (Tex. App.—Austin 2012, no pet.).

**B.     Testimony of Manuel Alfaro and Photographs Taken by Alfaro**

Segovia sought to have Alfaro testify about photographs he took of the crime scene. The trial court sustained the State's objection and did not admit the photographs or allow Alfaro to testify. Segovia claims the trial court erroneously excluded the testimony of Alfaro due to Alfaro's testimony allegedly violating Texas Rule of Evidence 614, the witness sequestration rule. *See* TEX. R. EVID. 614.

*1.     Arguments of the Parties*

Segovia argues that Rule 614's concerns for any improper influence on a witness do not apply because Alfaro's proffered testimony was limited to when and where the proposed photographs were taken. Accordingly, any testimony heard by Alfaro during the trial would not influence his testimony before the jury. Additionally, Segovia contends Alfaro was never listed as a defense witness because no one either contemplated or planned for Alfaro to testify.

The State counters that the trial court's exclusion was based on a determination that the photographs were not relevant because the photographs were taken in 2014, two years after the fact and were of little probative value.

*2.     Trial Court Ruling*

Alfaro was hired as the defense investigator. He consulted with the defense throughout pretrial, during trial, provided his opinions to defense counsel, and reviewed the State's file. After the fourth day of trial, defense counsel requested Alfaro return to the scene of the shooting and take additional photographs, specifically focusing on the balcony and the parking lot. Alfaro was prepared to testify there were trees obstructing the view from the balcony to the parking lot area where the alleged shooting took place. Alfaro took photographs from the balcony, looking down into the parking lot. The State objected to the witness and photographs, and defense counsel argued there was no violation under Rule 614. *See id.*

- 4 -

The trial court held as follows:

> You know, I don't think it's relevant because it's not the same view that they had when it happened. It's a completely different view now and for that reason and for him being—you invoked the Rule, he was present. I'm not going to allow him to testify.

Because the trial court excluded the evidence based on relevancy, we need not address whether Alfaro violated the Witness Sequestration Rule. *Cf. Russell v. State*, 155 S.W.3d 176, 179–80 (Tex. Crim. App. 2005) (explaining the purpose of invoking the rule is to prevent potential witnesses from being influenced by, or modifying their testimony because of, the testimony of other witnesses). We, therefore, turn to a determination of whether the trial court erred in excluding the testimony and photographs based on relevancy.

### 3. *Relevancy Determination*

Although Segovia contends the jury and not the trial court should have determined whether the photographs were taken from a "completely different view," Texas Rule of Evidence 104(a) dictates the initial question in deciding whether to admit evidence at trial is a preliminary question to be decided by the trial court. TEX. R. EVID. 104(a); *Tienda v. State*, 358 S.W.3d 633, 637 (Tex. Crim. App. 2012). Only relevant evidence is admissible. TEX. R. EVID. 402; *Montgomery*, 810 S.W.2d at 375.

"Relevant evidence is 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Manuel v. State*, 357 S.W.3d 66, 74 (Tex. App.—Tyler 2011, pet. ref'd) (quoting TEX. R. EVID. 401). A proponent of evidence is not required to "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *Campbell v. State*, 382 S.W.3d 545, 549 (Tex. App.—Austin 2012, no pet.) (internal quotation marks omitted). "The preliminary question for the trial court to decide is simply whether

the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Tienda*, 358 S.W.3d at 638; *see also Manuel*, 357 S.W.3d at 74 (stating "proponent must only produce sufficient evidence that a reasonable fact finder could properly find genuineness").

Under Rule 403, even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence. *See* TEX. R. EVID. 403. To be relevant, the photograph must "be a correct representation of the subject at a given time." *Delacerda v. State*, 425 S.W.3d 367, 393 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Huffman v. State*, 746 S.W.2d 212, 222 (Tex. Crim. App. 1988)). "[A] trial court may exclude any relevant evidence if its probative value is substantially outweighed by any or all of the countervailing factors specified in Rule 403." *Winegarner v. State*, 235 S.W.3d 787, 791 (Tex. Crim. App. 2007) (citing *Gigliobianco v. State*, 210 S.W.3d 637, 640 (Tex. Crim. App. 2006)).

### 4.   *Analysis*

Here, the photographs were taken from the apartment balcony looking into the parking lot. The purpose was to show the jury the obstructed view created by the trees. But the photographs actually depicted what the trees and parking lot looked like on May 2, 2014, not on the night of the alleged offense—June 8, 2012. The trial court concluded the photographs were not relevant because they did not depict the scene as it was on the night in question. *See Saldano v. State*, 232 S.W.3d 77, 101–02 (Tex. Crim. App. 2007) (holding photographs may be admitted to show what verbal testimony described).

We cannot conclude that the trial court's determination was outside the zone of reasonable disagreement or that the trial court abused its discretion when conducting a relevancy determination. *See Winegarner*, 235 S.W.3d at 791 (providing trial court "considerable latitude"

in determining "impact upon the jury, and to conduct the necessary balancing"). We, therefore, overrule Segovia's first issue.

## C. Testimony of Segovia's Alleged Gang Affiliation

Segovia next contends the trial court erred when it allowed the testimony of Bexar County Deputy Miguel Tena Mora.

### 1. Arguments of the Parties

Segovia argues the State's testimony regarding Segovia's involvement in the Mexican Mafia violated the requirement that the State provide timely notice of its intent to offer extraneous bad acts evidence.

The State counters that because the testimony was offered during the punishment phase, the proper test was an application of Texas Code of Criminal Procedure article 37.07 which only requires reasonable notice be given to the defendant. The State further argues that any error was harmless because Segovia was not surprised by the evidence and was able to counter with an explanation.

### 2. Testimony in Question

On April 30, 2014, during the guilt/innocence phase of the trial, but outside the presence of the jury, the State moved to supplement its witness list and its Notice of Intent to Introduce Evidence of Extraneous Offenses. The original notice was filed on September 13, 2012.

> The State: All right. Judge, for the record, at this time, based on some new information that was discovered this morning, the State needs to supplement its witness list and supplement the 404(b).
>
> At this time, we need to supplement that Andres Segovia has been identified as a member of the Mexican Mafia and, in fact, a ranking member of the Mexican Mafia. We need to add that to the 404(b).
>
> We are adding Bexar County Sheriff Deputy Miguel Tenamora [sic] to our witness list and he's a gang officer at the jail.

> And this information just came to us this morning. We're still checking into it. So as soon as we learned of it, I wanted to notify the Court and the defense. As we get more information we'll make the defense aware.

The Court: All right.

Defense: Judge, it's not in compliance with the statute that requires the State to turn over any 404(b) evidence in anticipation of the trial.

> This case has been going on for quite some time. The idea that the State did not know that there was an association is unfathomable to me. Again, it's not proper notice to the defense.

> What?

The State: Your Honor, last setting or a setting ago, I handed a paper to Mr. Segovia and I—and the bailiffs admonished me for doing that. They said because he is a known gang member, I couldn't do that. So it's been in the purview of the State. So I don't see that coming in the middle of trial and if—this was the March setting. It wasn't even this setting. Was it even the March setting? There's been so many. I don't believe that it's—

Defense: Proper notice, Judge, it's not.

The State: For the record, it sounds like the defense has been aware of his gang membership. The new information that we received this morning is regarding his ranking position within the Mexican Mafia.

Defense: That's not true. They told her he had some membership. They didn't tell them Mexican Mafia.

The State: They didn't tell me—

Defense: Whenever I went to go visit him at the county jail, nobody ever told me that I had to wait for an additional period of time because he was in lockdown or he was in that particular mod. I had no knowledge of this, Judge.

The Court: All right. Well, just get the information, and then I'll make a ruling later.

The testimony was not offered during the guilt/innocence portion of the trial. However, five days later, on May 5, 2014, during the punishment phase of the trial, the State again offered evidence

of Segovia's gang affiliation through a signed "gang letter." The State explained that a gang letter is provided to an individual upon entry into the Bexar County Jail.

> The State: . . . they're given an opportunity to state if they are a member of a gang. The purpose of it is to try to house those same members together so they cannot try to either recruit others in the jail to join their gang or have potential conflict with others in the gang.

In this case, because Segovia signed a letter acknowledging his membership in the Mexican Mafia, he was placed in the unit with other Mexican Mafia members. The prosecutor, however, argued that she did not learn until that morning that Segovia was "a ranking member—the ranking member of the Mexican Mafia."

Defense counsel objected to the admission of any evidence pertaining to Segovia's gang membership explaining that Segovia had been incarcerated since shortly after the incident in 2012 and the State should have had knowledge of (1) the alleged gang affiliation, and (2) his signing of a gang letter, prior to April 30, 2014. The State responded that Segovia himself signed the gang letter and, thus, the State's evidence that Segovia is a "ranking member of the Mexican Mafia" could not cause any type of undue surprise to the defense.

The trial court opined there was a difference between the information that he is a gang member and the specific evidence of his being "a ranking member." In overruling defense counsel's objection, the trial court warned:

> I'm going to tell [the State] to be very, very careful. I think the prospect that he is a gang member is probably—should be admissible, despite the lack of notice. Going any further, this ranking member business, or any of—you know, gang government protocol, for lack of a better way to say it, I've got problems with that.

Defense counsel followed up with an objection that the evidence being offered was more prejudicial than probative. *See* TEX. R. EVID. 401, 403. After Deputy Tena Mora testified under a proffer of testimony, the trial court again overruled defense counsel's objection. Once again, the trial court warned that its ruling was not "with regard to each and every specific question that was

- 9 -

asked during the proffer." The trial court clarified that it was not ruling on the admissibility of the gang letter itself.

### 3. Proper Punishment Evidence

Evidence offered during the punishment phase establishing Segovia's membership, affiliation, or association with a gang, specifically the Mexican Mafia, constitutes extraneous evidence of crimes or bad acts governed by article 37.07 of the Texas Code of Criminal Procedure and Rule of Evidence 404(b). *See* TEX. CODE CRIM. PROC. ANN. art 37.07, § 3(g) (West Supp. 2014) (citing TEX. R. EVID. 404(b)).

Article 37.07 provides that, "[o]n timely request of the defendant," the State must provide "reasonable notice . . . in advance of trial" of its intent to introduce extraneous-conduct evidence. *See Nance v. State*, 946 S.W.2d 490, 492 (Tex. App.—Fort Worth 1997, pet. ref'd). "The purpose of the notice requirement is to enable the defendant to prepare to meet the extraneous offense evidence." *Roethel v. State*, 80 S.W.3d 276, 282 (Tex. App.—Austin 2002, no pet.) (op. on reh'g). Any deficiency in notice is analyzed on how it affected a defendant's "ability to prepare for the evidence." *Id.*; *see also Nance*, 946 S.W.2d at 493 (explaining the notice requirement avoids unfair surprise and trial by ambush). The reasonableness of the notice turns on the facts and circumstances of each case. *Scott v. State*, 57 S.W.3d 476, 480 (Tex. App.—Waco 2001, pet. ref'd); *Patton v. State*, 25 S.W.3d 387, 392 (Tex. App.—Austin 2000, pet. ref'd).

The trial court has broad discretion to admit or exclude extraneous-conduct evidence. *See Garcia v. State*, 239 S.W.3d 862, 866 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (citing *Brooks v. State*, 76 S.W.3d 426, 435 (Tex. App.—Houston [14th Dist.] 2002, no pet.)) (applying this standard of review to admission of extraneous conduct evidence over objection based on article 37.07, section 3(g)'s notice requirements). The courts have long held that testimony regarding a defendant's affiliation with a gang may be relevant and admissible at the punishment

phase to show the defendant's character. *See Beasley v. State*, 902 S.W.2d 452, 456 (Tex. Crim. App. 1995); *Anderson v. State*, 901 S.W.2d 946, 950 (Tex. Crim. App. 1995); *Ho v. State*, 171 S.W.3d 295, 305 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) ("Even if appellant was no longer affiliated with the gang at the time of the shooting, evidence that he was a gang member is relevant—and thus admissible at punishment—because it relates to his character."). The evidence need not link the accused to the bad acts or misconduct generally engaged in by gang members, so long as the fact-finder is

1) provided with evidence of the defendant's gang membership,
2) provided with evidence of character and reputation of the gang,
3) not required to determine if the defendant committed the bad acts or misconduct, and
4) only asked to consider reputation or character of the accused.

*See Beasley*, 902 S.W.2d at 457; *accord Jessop*, 368 S.W.3d at 693.

*4.    Analysis of Evidence under Texas Code of Criminal Procedure Article 37.07*

Deputy Tena Mora's testimony that Segovia signed a form indicating his affiliation with the Mexican Mafia is sound evidence of his gang membership. Deputy Tena Mora also provided testimony consistent with the requirements set forth in *Beasley*. *See Beasley*, 902 S.W.2d at 457. Accordingly, the trial court did not abuse its discretion in admitting the evidence under article 37.07.

We acknowledge, however, Segovia's complaint is focused specifically on the lack of notice. TEX. CODE CRIM. PROC. ANN. art 37.07, § 3(g). The State possessed this information for almost two years and provided notice of extraneous offenses—but without the gang-affiliation information—more than eighteen-months prior to the trial.

Whether the notice was timely is of no accord if Segovia did not suffer harm. We, therefore, look at any harm associated with the State's amended notice of extraneous bad acts offered after the start of the trial.

- 11 -

### 5.    *Harm Analysis*

"'The admission of an extraneous offense into evidence during the punishment phase when the State failed to provide notice required by statute is non-constitutional error.'" *Gonzalez v. State*, 337 S.W.3d 473, 485 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (quoting *Ruiz v. State*, 293 S.W.3d 685, 695 (Tex. App.—San Antonio 2009, pet. ref'd)). "An appellate court may reverse a judgment of conviction or punishment based on a non-constitutional error only if that error affected the defendant's substantial rights." *Id.* (citing TEX. R. APP. P. 44.2(b)). Because the purpose of article 37.07, section 3(g) is to avoid unfair surprise and enable the defendant to prepare to answer the extraneous misconduct evidence, this court must analyze whether and how the notice deficiency affected Segovia's ability to prepare for this evidence. *Roethel*, 80 S.W.3d at 281–82.

This court's examination analyzes the record to determine whether the deficient notice resulted from prosecutorial bad faith or prevented the defendant from preparing for trial. *Id.* at 282. Specifically, this court must answer whether Segovia was surprised by the substance of the testimony and whether any surprise affected his ability to prepare for cross-examination or present mitigating evidence. *Id.* at 282; *see also Allen v. State*, 202 S.W.3d 364, 369 (Tex. App.—Fort Worth 2006, pet. ref'd). A 37.07 violation of a notice requirement does not have an "injurious" effect on the verdict if the defendant was not surprised by the evidence. *See Hernandez v. State*, 176 S.W.3d 821, 825 (Tex. Crim. App. 2005) (holding that evidence admitted in violation of rule of evidence 404(b)'s notice requirement is not harmful error if defendant not surprised by evidence); *see also Roethel*, 80 S.W.3d at 281–82.

Segovia's counsel was provided with notice that the State intended to use the testimony of Deputy Tena Mora on Wednesday, April 30, 2014. The testimony was offered to the jury on Monday, May 5, 2014. Defense counsel did not request a continuance or indicate that he needed additional time to prepare his defense in light of the State's proffer. *See Pelache v. State*, 324

S.W.3d 568, 577 (Tex. Crim. App. 2010) (identifying "appellant did not request a continuance, appear surprised by the allegations, or argue that he was unprepared to defend against the prior conviction allegations").

It would be difficult to imagine that Segovia would be surprised by his gang involvement considering that *he signed the paperwork* upon which the State relied. Segovia testified that he initialed "affiliated" because "the only option on there was member." He further explained the officer brought the paper in and told him to initial it, so he did. Segovia testified that his only option was "active or nonactive." Keeping in mind that Segovia had numerous previous arrests and had been processed by the Bexar County Jail on numerous occasions, the process would not have been new to Segovia.

Segovia further denied that he had been associated with the Mexican Mafia since 1994. To the contrary, Segovia testified that the only reason they classified him as a gang member was because of his tattoos: if you have a Spurs tag, "you will be classified as the Tango Orejon . . . for any type of cultura . . . you are classified as Mexican Mafia over anything else." Segovia knew his classification was Mexican Mafia. He signed the form and resided in the Bexar County Jail with the other Mexican Mafia inmates. The trial court could have reasonably determined that Segovia did not suffer any surprise.

Accordingly, we cannot say that Segovia was surprised by the substance of Deputy Tena Mora's testimony, i.e., Segovia's affiliation with the Mexican Mafia. *Roethel*, 80 S.W.3d at 282; *Hernandez*, 176 S.W.3d at 825; *Allen*, 202 S.W.3d at 369. Neither can we say that five-days' notice adversely affected Segovia's ability to prepare his defense. *Roethel*, 80 S.W.3d at 282. Because the testimony did not affect Segovia's substantial rights, we overrule Segovia's second issue. *See Gonzalez*, 337 S.W.3d at 485 (citing Tex. R. App. P. 44.2(b)).

We turn next to Segovia's alleged error in the trial court's charge on punishment.

## PUNISHMENT CHARGE

### A.    Arguments of the Parties

Segovia asserts two errors in the trial court's charge: (1) failure to include a sudden passion instruction and (2) instructing the jury that "you will find" rather than "if you find" on the habitual offender instruction.

The State counters that Segovia's testimony, specifically his admission to committing the enhancement allegations, foreclosed any possibility that he would be eligible for a reduced penalty range provided by the "sudden passion" finding. Additionally, even assuming the trial court's charge was in error, Segovia did not suffer any harm.

### B.    Standard of Review

A trial court's denial of a requested jury instruction on a defensive issue is reviewed for abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000); *accord Serrano v. State*, No. 01-13-00975-CR, 2015 WL 456511, at *4 (Tex. App.—Houston [1st Dist.] Feb. 3, 2015, no pet. h.). Appellate review of alleged jury charge error generally involves a two–step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). First, we must determine whether error occurred. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013). If there is error in the charge, we must then analyze whether sufficient harm resulted from the error to require reversal. *Id.*; *Ngo*, 175 S.W.3d at 744. If error has been properly preserved, as is the case here, reversal is required if the error is "calculated to injure the rights of defendant," meaning there must be some harm. *See* TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006); *Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). The defendant must have "'suffered some actual, rather than merely theoretical, harm from the error.'" *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (quoting *Warner v. State*, 245 S.W.3d 458, 462 (Tex. Crim. App. 2008)). We consider "'the entire jury

- 14 -

charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.'" *Barron v. State*, 353 S.W.3d 879, 883 (Tex. Crim. App. 2011) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1981) (op. on reh'g), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787, 788 (Tex. Crim. App. 1988)).

## C.   Sudden Passion Instruction

The defense requested a sudden passion instruction to be included in the trial court's charge on punishment.

### 1.   *Texas Penal Code Section 19.02(d)*

In a murder trial, a defendant may raise the issue of whether he caused the victim's death under the immediate influence of sudden passion arising from an adequate cause. *See* TEX. PENAL CODE ANN. § 19.02(d) (West 2011); *Wooten*, 400 S.W.3d at 605. "Sudden passion" is defined as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE ANN. § 19.02(a)(2); *Wooten*, 400 S.W.3d at 605. "The mere fact that a defendant acts in response to the provocation of another is not sufficient to warrant a charge on sudden passion." *Trevino v. State*, 100 S.W.3d 232, 241 (Tex. Crim. App. 2003).

"'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." TEX. PENAL CODE ANN. § 19.02(a)(1); *accord Wooten*, 400 S.W.3d at 605. Adequate cause is not determined by considering the defendant's peculiar conditions, such as low mentality or unstable emotions. *See Gonzales v. State*, 689 S.W.2d 900, 904 (Tex. Crim. App. 1985) (quoting *Hart v. United States*, 130 F.2d 456, 458 (D.C. Cir. 1942)). Instead, adequate cause is determined by applying the "person of ordinary temper" standard, which is the same as the

- 15 -

reasonable person standard. *See id.* at 903. This approach is used to avoid differing applications of the law. *See id.*

Segovia contends the jury would at least have had the benefit of receiving the "sudden passion arising from an adequate cause" instruction which Appellant's attorney could have more effectively argued for a sentence at the lower range of punishment.

### 2. Charge Conference

The record indicates the trial court was concerned about jury confusion and provided a relatively detailed explanation of why it chose to deny the defense request. As this court has previously stated, "'It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and to prevent confusion.'" *Vogt v. State*, 421 S.W.3d 233, 238–39 (Tex. App.—San Antonio 2013, pet. ref'd) (quoting *Reeves*, 420 S.W.3d at 818). The trial court explained as follows:

> I understand the defendant's special requested charge wanting to get voluntary manslaughter, thereby reducing the punishment. However, when the defendant testified, the defendant admitted to the two prior felony convictions. With that admission in the record and the state of the record, that would mean the punishment range would be a minimum of 25 to 99 or life in the penitentiary.
>
> . . . .
>
> So despite the argument that the evidence could be construed to show some evidence from somewhere—which I understand. I understand the burden and I understand the requirement, a scintilla of evidence raising the issue that if a murder happened or the taking of a life was the result of adequate cause and sudden passion, then the defense is required—or the Court is required to submit that to the jury.
>
> However, since the defendant has admitted that he does have two prior felony convictions, then that would make that practically moot.
>
> Due to the fact that I believe that submitting it would be confusing—I haven't heard—I haven't heard a whole lot of lawyers who understand it. That it would—the only reason to raise it is for the lower possible punishment range.

Since that lower possible punishment range is no longer a legal possibility, it is in fact a legal impossibility, I think it would be superfluous and confusing and actually impede the jury's deliberation on this.

The trial court subsequently denied the instruction. Defense counsel argued the sudden passion instruction would provide a comparison for the jury when assessing the range of punishment. The trial court overruled defense counsel's objections.

### 3. *Application*

Segovia argued before the trial court, and again on appeal, that the sudden passion charge would have allowed the jury to consider the lower end of the penalty range. Specifically, Segovia contends that being able to point to the charge with a definition of sudden passion would have persuaded the jury to impose a lesser sentence. We disagree.

During closing arguments, defense counsel argued "sudden passion" before the jury. He argued that Segovia's actions were in the heat of the moment and, based on a "situations like that," Segovia did not deserve "a harsh sentence."

> And again, if you put yourself in that situation or if you've ever seen a situation where things happen instantaneously—and we've all been involved in situations like that, thankfully they're not as tragic as this—that you're not making rational judgments. So in his mind's eye, there's shooting going on and there's shooting and Eric is shooting. And you saw all the physical evidence pointing to the fact that my client's hiding for cover and shooting back.

> We don't know. They never properly told us in fact who shot who, if in fact it happened. But you found him guilty and, again, we accept it for whatever reason or logic that you came to that conclusion. We accept it. But the fact of the matter is, it's important because it goes to punishment.

> My client did not turn around and, bang, shoot him point-blank in the head. That is absolutely impractical. It couldn't happen under those circumstances because of the fear that was expressed by my client, the fear for his own life. And he ran away.

. . . .

As the State pointed out, he made choices. But does this circumstance of what happened that night truly justify a harsh sentence? Truly? I think not. But that's your decision.

The trial court clearly believed the instruction would confuse, as opposed to assist the jury in its understanding of the charge. *See Vogt*, 421 S.W.3d at 238–39; *Reeves*, 420 S.W.3d at 818. In this case of first impression, we are asked to determine whether a defendant who presents evidence on the statutory requirements of the requested instruction, but is prohibited from receiving the statutory benefit of the requested instruction, is entitled to the instruction. *Compare Vogt*, 421 S.W.3d at 238–39; *Reeves*, 420 S.W.3d at 818 *with Bufkin*, 207 S.W.3d at 781–82; *Wesbrook*, 29 S.W.3d at 122. Here, although Segovia may have presented evidence on the question of sudden passion, as a felony habitual offender, Segovia was not entitled to the second-degree penalty range contained within the instruction.

To give the instruction requested by defense counsel could have potentially led jurors to believe that a penalty range of two years to twenty years' confinement was a possibility. *See Bufkin*, 207 S.W.3d at 782 (reviewing court's denial of the defendant's requested instruction). Such a discrepancy in the charge could have potentially been misleading or allowed for some form of jury nullification. Based on the record before this court, we cannot say the trial court abused its discretion in denying the requested instruction. *See Wesbrook*, 29 S.W.3d at 122. Accordingly, we overrule Segovia's issue regarding the sudden passion instruction.

**E.   Habitual Felony Offender**

Segovia next argues that the trial court's failure to solicit a plea on the State's enhancement allegations required the State to prove each enhancement allegation beyond a reasonable doubt. Without a plea of true, Segovia contends the trial court erred in instructing the jury "you will find" Segovia's enhancement allegations to be true.

- 18 -

### 1. *Texas Penal Code Section 12.42(d)*

The State timely provided notice of its intent to use two prior convictions for enhancement of punishment under Texas Penal Code section 12.42. *See* TEX. PENAL CODE ANN. § 12.42 (West Supp. 2014). Texas Penal Code section 12.42(d), describing the penalty for habitual felony offenders generally, provides that

> if it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant *shall be punished* by imprisonment . . . for life, or for any term of not more than 99 years or less than 25 years.

*Id.* § 12.42(d) (emphasis added); *see also Allen v. State*, 865 S.W.2d 472, 474 (Tex. Crim. App. 1993) (concluding 12.42(d) is mandatory operation).

"To establish a prior conviction for purposes of enhancement, the State must prove two elements beyond a reasonable doubt: (i) the existence of a prior conviction; and (ii) the defendant's link to that conviction." *Wood v. State*, 453 S.W.3d 488, 491 (Tex. App.—San Antonio 2014, pet. filed) (citing *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007)). A defendant's plea of "true" to the enhancement allegation satisfies the State's burden of proof. *Wilson v. State*, 671 S.W.2d 524, 525 (Tex. Crim. App. 1984). Absent a plea of "true," the State must prove the two elements by proof beyond a reasonable doubt, including introducing evidence such as the defendant's admission or stipulation or documentary proof. *Flowers*, 220 S.W.3d at 921–22. Both parties agree the trial court's instruction was proper *had Segovia actually entered a plea of true*. However, because there was no plea, the burden of proof rested on the State and the trial court's charge usurped that burden. *Id.* Accordingly, the charge was in error.

Finding error, we must conduct a harm analysis.

*2.     Harm Analysis*

"Harm does not emanate from the mere failure to include the requested instruction." *Wooten*, 400 S.W.3d at 606 (citing *Trevino*, 100 S.W.3d at 241). In analyzing harm resulting from a jury charge error, "[n]either the State nor the defense has a burden to prove harm." *Reeves*, 420 S.W.3d at 816; *accord Wooten*, 400 S.W.3d at 606; *Trevino*, 100 S.W.3d at 241 (recognizing lack of burdens in harm analysis and "the appellate court should make its own assessment as to whether harm occurred"). Theoretical harm, however, is not sufficient. *Reeves*, 420 S.W.3d at 816.

*3.     Roberts v. State *Analogy*

The court's analysis in *Roberts v. State*, 321 S.W.3d 545 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd), is instructive. *Cf. Washington v. State*, 677 S.W.2d 524 (Tex. Crim. App. 1984), *overruled on other grounds, Bell v. State*, 994 S.W.2d 173, 175 (Tex. Crim. App. 1999) (reviewing testimony adduced during the guilt/innocence phase of the trial); *Lewis v. State*, 814 S.W.2d 513 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) (reviewing appellant's entry of a plea of not true to the enhancement allegations).

In *Roberts*, the State sought to use four prior convictions to enhance Robert's punishment. *Roberts*, 321 S.W.3d at 553. Roberts entered a plea of true to the first three enhancement allegations, but "not true" to the fourth. *Id.* The trial court's punishment charge instructed the jury "to find" all four allegations true. *Id.* The appellate court looked at the entire record: (1) the evidence adduced at both the guilt/innocence and the punishment phase, (2) the penitentiary packets offered for the first three enhancement allegations, (3) the trial court judgment convicting Roberts on the fourth enhancement allegation, and (4) Roberts's testimony. The court acknowledged that because Roberts entered a plea of not true, the State was required to prove beyond a reasonable doubt the existence of the prior conviction and Roberts's link to the conviction. *Id.* In proving such, the court noted, "[a]ny type of evidence, documentary or

testimonial, can suffice." *Id.* Reviewing the entire record, the court concluded that the evidence was sufficient to make a finding of true as to the fourth enhancement allegation and Roberts did not suffer egregious harm. *Id.* at 556.

Importantly, because Roberts's attorney did not object to the charge, the harm analysis was a question of egregious harm. *Id.* at 553–54; *cf. Vogt*, 421 S.W.3d at 239 (explaining "where the error is urged for the first time on appeal, a reviewing court will search for 'egregious harm'"). In this case, Segovia's attorney did object to the wording of the court's charge, so this court need only find "some harm" as a result of the error to obtain a reversal. *Ngo*, 175 S.W.3d at 743 (citing *Almanza*, 686 S.W.2d at 171). The analysis, however, is the same. *Roberts*, 321 S.W.3d at 554.

### 4. *Review of the Record*

The State introduced ten prior judgments of conviction, ***without objection from defense counsel***. During his testimony, Segovia admitted to the two prior convictions set forth in the State's enhancement allegations; both allegations were convictions for felony assault on a family member in cause number 2006-CR-6793 (convicted August 27, 2007) and 2001-CR-5442 (convicted June 13, 2002). He also admitted to the other convictions offered by the State.[2]

> The State: Are you the same Andres Alfredo Segovia who in 2011-CR-5442 was convicted of the offense of assault family-second offense on August 6th, 2002?
>
> Segovia: Yes, sir.
>
> The State: And I apologize for the cause number. It's 2001-CR-5442. Is that—are you the same person?
>
> Segovia: Yes, sir.

---

[2] The additional offenses included two felony convictions for unauthorized use of a motor vehicle, one misdemeanor conviction for unlawful carrying of a firearm, four misdemeanor convictions for assault causing bodily injury, and one misdemeanor conviction for failure to identify to a police officer.

The State: Are you also the same Andres Alfredo Segovia who in Cause Number 2006-CR-6793 was convicted of the offense of assault family-second offense on August 27th of 2007? Are you the same individual?

Segovia: Yes.

The State: And rather than spend another few minutes here, you earlier heard the State admit Exhibit No. 69 through 78, your criminal judgments, correct?

Segovia: Yes, sir.

The State: Are you the same individual who was convicted in each of those cases?

Segovia: Yes, sir, I am.

The State: All 10 of them?

Segovia: Yes, sir.

Additionally, during closing argument, defense counsel acknowledged his criminal history—"Yes, [Segovia] does have a criminal history. We don't deny that."

    *5.    Application*

Although it was the State's burden to obtain a plea of true on the record, Segovia must have suffered "some" harm. *See Reeves*, 420 S.W.3d at 816. On the record before this court, there was no evidence refuting the enhancement allegations. Segovia did not plead true to some and not true to others. He admitted both of the enhancement allegations, as well as the eight other offenses presented during the punishment phase. "During trial proceedings, the evidence of [Segovia's guilt on the enhancement allegations] was undisputed, uncontradicted, and seemed to have been taken as a 'given' by the parties." *Buckley v. State*, No. 14-12-00202-CR, 2013 WL 865567, at *3 (Tex. App.—Houston [14th Dist.] 2013, Mar. 7, 2013, pet. ref'd) (mem. op., not designated for publication) (citing *Kucha v. State*, 686 S.W.2d 154, 156 (Tex. Crim. App. 1985)). Even assuming error, the record does not support *any* finding of harm. The appellant conceded as much during

oral argument. Segovia admitted the prior convictions and the jury therefore had no other options. The jury was compelled to sentence Segovia under the enhanced penalty range.

Segovia does not contend that the evidence is insufficient to support a finding of true. Although the trial court erred in not obtaining an actual plea to the enhancement allegations, the record overwhelming supports (1) the existence of Segovia's prior convictions, and (2) Segovia's link to those convictions. *Flowers*, 220 S.W.3d at 921. Based on Segovia's testimony and the convictions admitted during the punishment phase, we cannot conclude that Segovia suffered any harm and we, therefore, overrule Segovia's last issue on appeal.

## CONCLUSION

Having overruled each of Segovia's issues on appeal, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

PUBLISH



# Fourth Court of Appeals
## San Antonio, Texas

## JUDGMENT

No. 04-14-00367-CR

Andres Alfredo **SEGOVIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2012CR8592
Honorable Ray Olivarri, Judge Presiding[1]

BEFORE JUSTICE ALVAREZ, JUSTICE CHAPA, AND JUSTICE PULLIAM

In accordance with this court's opinion of this date, the trial court's judgment is AFFIRMED.

SIGNED April 29, 2015.

_____
Patricia O. Alvarez, Justice

---

[1] The Honorable Ray Olivarri presided over the guilt/innocence portion of the trial. The punishment phase was presided over by the Honorable George Godwin.

Print this page

# Envelope 5473053

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 05/29/2015 02:36:28 PM |
| Case Number | |
| Case Description | |
| Assigned to Judge | |
| Attorney | Barry Hitchings |
| Firm Name | Hitchings & Pollock |
| Filed By | Julie Pollock |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | Hitchings & Pollock |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | 8983783 |
| Order # | 005473053-0 |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFileAndServe |
| Filing Code | Petition for Discretionary Review |
| Filing Description | SegoviaAndresPetitionForDiscretionaryReview |
| Reference Number | 04-14-00367-CR |
| Comments | |
| Status | Rejected |

### Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

### Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| Other | 06/01/2015 02:43:43 | The petition for discretionary review does not contain a certification in compliance with T.R.A.P. 9.4(i)(3); counsel indicates the petition contains 4508 words which |

PM              exceeds the limit of 4500. You have ten days to file a corrected petition.

## Documents

| | | |
|---|---|---|
| *Lead Document* | Segovia PDR.pdf | [Original] |
| *Attachments* | Segovia4thCtOpinionAppendix.pdf | [Original] |

## eService Details

| Name/Email | Firm | Service Type | Status | Served | Date/Time Opened |
|---|---|---|---|---|---|
| State Prosecuting Attorney<br>information@spa.texas.gov | | EServe | Sent | Yes | 05/29/2015<br>03:28:32 PM |
| Nathan Morey<br>nathan.morey@bexar.org | | EServe | Sent | Yes | 05/29/2015<br>03:25:18 PM |