

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00699-CR

Jerimiah **BAREFIELD**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2012CR6188A
Honorable Philip A. Kazen, Jr., Judge Presiding

Opinion by:     Jason Pulliam, Justice

Sitting:     Sandee Bryan Marion, Chief Justice
     Karen Angelini, Justice
     Jason Pulliam, Justice

Delivered and Filed:  November 25, 2015

AFFIRMED

A jury convicted Appellant Jerimiah Barefield of murder, and based on the jury's recommendation, the trial court sentenced Barefield to life imprisonment.  On appeal, Barefield contends the trial court erred by: (1) denying his motion to suppress the first statement he made to police; (2) admitting into evidence a baseball cap that held his DNA; (3) including a law-of-parties jury-charge instruction; and (4) failing to include a unanimity jury-charge instruction.  Barefield also contends the evidence presented at trial was legally insufficient to support his conviction.  We affirm the trial court's judgment.

**BACKGROUND**

On October 26, 1997, three young men entered the 402 night club[1] in San Antonio, Texas. A waitress who testified at trial thought it strange that the men stood in the doorway where she could not see their faces, and she then noticed "they had a gun." The waitress testified she then heard gunshots and "hit the floor," but did not see which of the men fired the shots. A club patron testified he thought he heard firecrackers and then saw Kimberly Coleman had been hit by the gunfire. An autopsy later revealed Coleman died of a gunshot wound to the neck.

Following the initial investigation, police were called back to the scene when a club employee found a baseball cap in a vacant lot in the direction the suspects fled. Police officers collected the cap. At the time of the original investigation, DNA testing was possible but it was expensive. Because investigators did not have a suspect against whom to match any possible DNA results, they did not request DNA testing on the baseball cap. The investigation went cold.

In response to an inquiry from Coleman's family in 2011, San Antonio Police Detective Robert Bunnell looked into the case and determined that with the advances in forensics, the investigation was worth pursuing. Detective Bunnell testified he submitted shell casings collected at the scene and the baseball cap for forensic testing. Detective Bunnell also interviewed potential witnesses mentioned in the case file.

Detective Bunnell testified he received results from the DNA testing, and based upon these results, he enlisted Officer Marc Valero to contact Barefield to ask if he would "come by and talk to us." Officer Valero testified he assured Barefield at that time that Barefield was not under arrest and he was not required to go to the police department if he did not want to do so. Barefield agreed to accompany Officer Valero to the police department, where he was interviewed by Detective

---

[1] In the record, the establishment where the murder occurred is referred to alternately as the 402 Club and the 402 Lounge. For purposes of this opinion, we refer to it as the 402 night club.

Bunnell and Detective Mike DeLeon.  Detective Bunnell testified that Barefield was not advised of the *Miranda* or statutory warnings prior to this interview.

Bunnell testified Barefield's first interview lasted approximately three hours, and after Barefield viewed a letter indicating the DNA evidence collected from the baseball cap was consistent with his DNA profile, Barefield began making inculpatory statements and describing the events the night of the murder.  Officer Valero drove Barefield home following the interview, and Detective Bunnell completed the affidavits needed to obtain search and arrest warrants.  Detective Bunnell contacted Officer Valero approximately an hour after he took Barefield home with the information that an arrest warrant for murder had been issued for Barefield.  After waiting for backup, Officer Valero returned to Barefield's home and arrested him.  After his arrest, Barefield made a second statement to Detectives Bunnell and DeLeon.

Barefield was subsequently indicted for murder, for which a jury found him guilty.  The trial court sentenced Barefield in accordance with the jury's recommendations, and Barefield perfected this appeal.

## ANALYSIS

### Issue One:  Denial of Motion to Suppress

In his first issue, Barefield contends the trial court erred by denying his motion to suppress the first statement he made to police.  Barefield argues the statement was made involuntarily as a result of an improper custodial interrogation due to the failure to provide the warnings required by *Miranda v. Arizona* and Article 38.22 of the Texas Code of Criminal Procedure.  *Miranda v. Arizona*, 384 U.S. 436 (1966); TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2013).  Barefield argues the circumstances surrounding his first statement to police give rise to the conclusion he was in custody at the time, thereby triggering the necessity of these warnings.  To support this argument, Barefield contends he was retrieved from his home by a uniformed police

officer, transported to the police department in the back seat of a marked police car, and placed in a small, windowless room where he was held during a lengthy interrogation. Barefield additionally contends he was always the suspect and, once the baseball-cap DNA results became available, he became the sole focus of the investigation. Barefield concludes his statement should have been suppressed because these circumstances indicate he was in custody when he gave his first statement, and the detectives failed to provide the required warnings.

In response, the State contends when Barefield gave his first statement to police, he was not in custody because Barefield was not formally arrested, told he was not under arrest, not restrained with handcuffs, and informed he was free to leave when he wanted. The State further argues the police made no threats or promises, and following the interview, Barefield was driven home, as he had been assured. Based upon these circumstances, the State concludes Barefield was not in custody when his first statement was taken, and therefore, the *Miranda* and Article 38.22 warnings were not required.

*Standard of Review*

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014). The issue whether an accused's statement is voluntary is a mixed question of law and fact that may depend upon credibility and demeanor. *Garcia v. State*, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000). Because the trial court is the trier of fact and judge of the credibility of witnesses, the reviewing court must review the record in the light most favorable to the trial court's findings and give almost total deference to the trial court's determination of historical facts, the weight to be given testimony, and to its application of law to fact questions that turn upon credibility and demeanor. *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012); *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). The trial court's application of law to those determined facts is reviewed de novo. *Story*, 446 S.W.2d at 732. The

appellate court must uphold the trial court's judgment unless it is arbitrary, unreasonable, or outside the zone of reasonable disagreement. *Id*. In addition, the trial court's judgment must be affirmed if it is correct on any theory of law applicable to the case. *Id*.

*Applicable Law*

For a statement obtained during a custodial interrogation to be admissible against a suspect, the United States Constitution requires the suspect be warned by police that "he has the right to remain silent, that any statement he does make may be used against him, and that he has the right to the presence of an attorney." *Miranda*, 384 U.S. at 444. Texas law additionally requires police inform the suspect he has the right to terminate the interview at any time. TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2013). The required *Miranda* and Article 38.22 warnings are intended to "safeguard the privilege against self-incrimination during custodial interrogation." *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009). Therefore, to be entitled to the *Miranda* and Article 38.22 warnings, a suspect must be "in custody" at the time a statement is made. *See id*. To preclude a statement from being used against him at trial, a defendant bears the initial burden of proving the subject statement was the product of custodial interrogation. *Id*.

Based upon Barefield's argument and the undisputed fact he was not given *Miranda* and Article 38.22 warnings, the central focus with respect to whether his first statement should have been suppressed is whether Barefield was "in custody" at the time he gave the first statement. A person is considered to be "in custody" during an investigational interview when: (1) the individual is formally arrested, or (2) the individual's freedom of movement has been restricted to the degree associated with a formal arrest. *Thai Ngoc Nguyen v. State*, 292 S.W.3d 671, 677 (Tex. Crim. App. 2009). Determining whether an individual was in custody at the time a statement was given is made through examination of the entirety of the circumstances surrounding the interrogation. *Estrada v. State*, 313 S.W.3d 274, 294 (Tex. Crim. App. 2010). A person is in custody if, under

the circumstances, an objectively reasonable person would believe his freedom of movement is restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996).

*Application*

During the pretrial hearing on Barefield's motion to suppress, as well as the hearing on the motion to reconsider its initial denial of the motion to suppress, the trial court had before it live testimony from Officer Valero, Detectives Bunnell and DeLeon, and Barefield, as well as the DVD of Barefield's interview with the detectives. During the first hearing, Officer Valero testified he informed Barefield he was not under arrest and could decline the invitation to speak with the detectives. Detective Bunnell testified Barefield was not advised of the *Miranda* or Article 38.22 warnings because Barefield was not in custody or under arrest. Detective Bunnell also testified he told Barefield he could leave, and would be driven home if Barefield did not want to continue with the interview.

Barefield admitted he was not handcuffed and was told he was not under arrest. However, Barefield also testified he believed he was not free to leave when Officer Valero took him to the police department and he was questioned. Barefield additionally testified he was told he would not need an attorney, was threatened, and then was promised leniency.

In its Findings of Fact, the trial court stated Barefield's testimony was not credible because Barefield admitted "he could have voluntarily gone to talk to police because he was not on parole and had no warrants out for his arrest." Following the second hearing, the trial court adopted the findings and conclusions from the first hearing, again finding Barefield's testimony not entirely credible.

The circumstances surrounding Barefield's interview and first statement are similar to those considered by the Texas Court of Criminal Appeals in *Estrada v. State*. *See Estrada*, 313

S.W.3d at 294. In *Estrada*, the appellant was subjected to a five-hour interview at the police department after he was driven to the police department by an officer. *Id*. The appellant was informed he was free to leave, and he indicated he wanted to leave several times but did not do so. *Id*. Additionally, the appellant was the focus of the investigation, and shortly following his interview with police, a warrant was issued for his arrest. *Id*. The Court of Criminal Appeals found there was no formal arrest or restraint of freedom of the degree associated with a formal arrest. Because the appellant was not in custody, the court concluded the *Miranda* and Article 38.22 warnings were not required. *Id*.

In this case, viewing the record in the light most favorable to the trial court's findings, the police informed Barefield he was not under arrest, and therefore, not required to go the police station to speak with detectives. Barefield voluntarily accompanied Officer Valero to the police station, was informed he was free to leave and an officer would drive him home should that be the case. Barefield was not handcuffed, nor was he threatened or given promises by the detectives. At the conclusion of the interview, although Barefield had given inculpatory statements, he was returned to his home rather than detained.

Thus upon examination of the entirety of the circumstances surrounding Barefield's interview and first statement to police, the testimony and evidence revealed sufficient basis for the trial court to conclude Barefield was not restrained to the degree associated with a formal arrest and, therefore, he was not in custody at the time he made the first statement. Because Barefield was not in custody at the time the first statement was given, *Miranda* and Article 38.22 warnings were not required. *Id*.

The trial court did not abuse its discretion by denying Barefield's motion to suppress his first statement to police. Barefield's first issue on appeal is overruled.

**Issue Two:  Admissibility of Baseball Cap**

In his second issue on appeal, Barefield complains the trial court improperly admitted State's Exhibit 29A, a Kansas City Chiefs baseball cap.  Barefield argues the baseball cap was inadmissible due to the absence of any evidence of a proper chain of custody, and as a result, the DNA evidence obtained from the cap was also erroneously admitted.

*Standard of Review*

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard.  *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008); *Segovia v. State*, 467 S.W.3d 545, 549 (Tex. App.—San Antonio 2015, pet. ref'd).  The trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles.  *McCarty*, 257 S.W.3d at 239; *Segovia*, 467 S.W.3d at 549.  An appellate court will not disturb the trial court's ruling on the admission of evidence unless that ruling falls outside the zone of reasonable disagreement.  *McCarty*, 257 S.W.3d at 239; *Segovia*, 467 S.W.3d at 549.

*Applicable Law*

"[T]he evidentiary rules do not specifically address the proper chain of custody."  *Druery v. State*, 225 S.W.3d 491, 503 (Tex. Crim. App. 2007).  The rules, however, "do state that identification for admissibility purposes is satisfied if the evidence is sufficient to support a finding that the matter in question is what its proponent claims."  *Id*.  In the absence of evidence of tampering or fraud, chain of custody problems do not affect the admissibility of evidence.  *Id*. Rather, chain of custody problems "affect the weight that the fact-finder should give the evidence, which may be brought out and argued by the parties."  *Id*. at 503-04.

*Application*

At trial, Officer Aubrey Plauche testified that on October 26, 1997, he and Officer Mario Valdez[2] responded to the crime scene at the 402 night club. Officer Plauche explained Officer Valdez was a trainee at the time and was responsible for writing the team's reports, but the officers acted as a unit during investigations. In his report Officer Valdez, listed himself and Officer Plauche as the reporting officers. Officer Plauche testified that at the scene, he assisted with crowd control while Officer Valdez gathered information and collected evidence. After the officers departed the scene, they were called back to the location because someone found evidence that could be important. Upon their return, the owner/manager of the club directed the officers to a nearby vacant lot, where he pointed out a baseball cap lying on the ground. Officer Plauche testified before either officer could prevent it, the owner/manager picked the baseball cap up off the ground and handed it to them. Officer Plauche marked the baseball cap with his initials and badge number, which he testified at trial were still visible on State's Exhibit 29A, thus indicating it was the same baseball cap he had taken custody of in 1997. Officer Plauche testified he delivered the baseball cap to now-retired Detective Steve Holson, who was a member of the Evidence Unit.

At trial, Detective Holson testified when he received the baseball cap, he placed his initials and badge number on the cap as well. He then put the cap inside an evidence bag, sealed the bag, and placed it in the property room. Detective Holson testified he recognized his markings on the baseball cap, although he did not see his markings on the envelope the baseball cap was in at the time of trial.

The testimony presented at trial was sufficient to support a finding by the trial court that the baseball cap offered by the State into evidence was what the State purported it to be, the

---

[2] At the time of trial, Officer Mario Valdez was deceased and was, therefore, not able to testify.

baseball cap found near the scene shortly after the offense took place. Both Officer Plauche and Detective Holson testified the baseball cap presented at trial was the same baseball cap on which each had placed his initials and badge number in 1997. Additionally, while the envelope in which the baseball cap was delivered to court did not bear Detective Holson's mark, Detective Holson testified the baseball cap itself did contain the necessary identifying marks. Further, the record includes no evidence of tampering or fraud. Any discrepancies in the chain of custody affected the weight to be given the evidence, not its admissibility. *See id.* at 503.

Based upon the testimony of the investigating police officers, the trial court's admission of the evidence does not fall outside the zone of reasonable disagreement. The trial court did not abuse its discretion by admitting State's Exhibit 29A. We overrule Barefield's second issue on appeal.

## Jury Charge

In his third and fourth issues on appeal, Barefield presents two different challenges to the jury charge.

### *Standard of Review*

An appellate court's first duty in analyzing a jury charge issue is to determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error exists, the appellate court must then determine whether that error requires reversal based on the harm analysis set forth in *Almanza v. State*. *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). "Under *Almanza*, the degree of harm required for reversal depends on whether error was preserved in the trial court." *Villarreal*, 453 S.W.3d at 433. Error properly preserved by objection will require reversal provided the defendant suffered "some harm." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013); *Ngo*, 175 S.W.3d at 743. On the other hand, error not properly preserved by objection must be

"fundamental," and reversal is required only if the defendant suffered egregious harm. *Reeves*, 420 S.W.3d at 816; *Ngo*, 175 S.W.3d at 743-44.

### *Issue Three: Inclusion of Law-of-Parties Jury Instruction*

Without explanation or further direction, Barefield complains in his third issue that the inclusion of the law-of-parties instruction created confusion and allowed his conviction on a theory not charged in the indictment or presented to the jury in evidence.

Rule 38.1(i) of the Texas Rules of Appellate Procedure provides that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1. Although we must construe briefing requirements liberally and reasonably, a party asserting error on appeal must put forth some specific argument and analysis showing the record and the law support his contentions. *See Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000). When the appellant fails to discuss the evidence supporting his claim or apply the law to the facts, he presents nothing for review. *See id*.

Thus, Rule 38.1(i) requires Barefield to provide this court with a discussion of the facts and the authorities relied upon. *See* TEX. R. APP. P. 38.1. Barefield fails to analyze the issue as intended by the rule. The brief, conclusory statements provided do not satisfy the briefing requirements of Rule 38.1. *See id*. Barefield's argument on this issue is difficult to discern because the brief lists only the relevant law and a description of the different portions of the jury charge. The brief provides no argument pertaining to any specific error committed by the trial court or any specific deficiency in the jury charge. The brief additionally provides no analysis to show how the referenced law applies to any alleged error in the jury charge.

From the brief, we cannot discern how the instructions given created confusion or caused Barefield to be convicted on a theory not charged or presented. We, therefore, conclude Barefield waived this issue based upon his failure to comply with Rule 38.1(i).

*Issue Four:  Failure to Include a Jury-Unanimity Instruction*

In his fourth issue, Barefield complains the trial court committed error by failing to include an instruction in the jury charge advising the jury that all members must agree whether Barefield was guilty as a principal actor or whether Barefield was just a party to the offense.  Barefield contends this omission deprived him of a unanimous decision of guilt by the jury.

Barefield did not object to the jury charge on this basis.  Thus, Barefield did not properly preserve the issue in the trial court.  Reversal is proper only if error exists and resulted in egregious harm.  *See Villarreal*, 453 S.W.3d at 433.

The requirement of a unanimous verdict helps ensure each juror is convinced beyond a reasonable doubt that the State proved each essential element of an offense.  *See Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007).  There is no general requirement, however, that the jury reach unanimous agreement on preliminary factual issues underlying a verdict, such as the manner and means by which an offense was committed.  *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991).  In addition, a jury need not unanimously determine an accused's status as a principal or party and, if a party, what exactly his party accountability might be.  *Leza v. State*, 351 S.W.3d 344, 357 (Tex. Crim. App. 2011).

Section 7.02 of the Texas Penal Code, which defines party liability, describes alternative manners by which an accused may be held accountable for another's conduct, not the elements of the underlying offense.  *Id.*; *see* TEX. PENAL CODE ANN. § 7.02 (West 2011).  Therefore, if the jury determines that an accused is guilty of every essential element of the alleged offense—"*either* as a party *or* under some theory of party liability"—the jury is not required to unanimously determine what the accused's "precise role" was in the offense.  *Leza*, 351 S.W.3d at 357.

In this case, five theories of party liability were submitted to the jury, but Barefield was charged with only one offense—the murder of Kimberly Coleman.  The application paragraph

- 12 -

required unanimity regarding Barefield's culpability for murder, but did not require unanimity as to the manner in which he was culpable—as a principal or as a party to the offense charged. Because the jury was not required to reach a unanimous determination of the manner in which Barefield was culpable—as the principal actor or as a party, Barefield's argument fails. *Id*.

The record and jury charge given reveal the jury reached a unanimous determination on the issue of Barefield's guilt on the murder charge. Barefield's complaint regarding the lack of a jury unanimity instruction with respect to the alternate theories of party liability is contrary to established law. *Id*. Therefore, the trial court did not err in not including a unanimity instruction.

Based upon this conclusion, this court need not proceed to a harm analysis. Barefield's fourth issue is overruled.

### Issue Five: Legal Sufficiency

In his fifth issue, Barefield challenges the legal sufficiency of the evidence supporting his conviction. Barefield argues that without the admission of his first statement and the baseball cap, the evidence presented at trial is insufficient to sustain his conviction. Barefield does not argue, however, the evidence is insufficient with the proper admission of the complained-of evidence. Having already addressed the admissibility of the complained-of evidence above and found no error in its admission, this court is left with nothing to review given the lack of complaint regarding the sufficiency of the evidence when including the first statement and the baseball cap. Accordingly, Barefield's fifth issue on appeal is overruled.

### CONCLUSION

For the reasons stated, we overrule Barefield's issues raised on appeal. Accordingly, we affirm the trial court's judgment.

Jason Pulliam, Justice

DO NOT PUBLISH