

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-15-00515-CR

Rodolfo Nino **ALEMAN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 5, Bexar County, Texas
Trial Court No. 465736
Honorable George H. Godwin, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Karen Angelini, Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  June 22, 2016

AFFIRMED

Appellant Rodolfo Nino Aleman was charged with misdemeanor prostitution pursuant to

Texas Penal Code section 43.02(b). *See* Act of May 21, 2013, 83rd Leg., R.S., ch. 1252, § 15.2013,

3167, 3170 (West) (codified at TEX. PENAL CODE ANN. 43.02(b)).  After returning a verdict of

guilty, the jury assessed punishment at 180 days confinement in the Bexar County Jail, suspended

and probated for a period of one year, and a fine in the amount of $1,500.00.  On appeal, Aleman

contends: (1) the evidence was legally insufficient to support his conviction; (2) the trial court

erred in permitting speculative testimony; and (3) the trial court erred in denying Aleman's request

for a mistake of fact instruction in the court's charge to the jury. We affirm the trial court's judgment.

**FACTUAL BACKGROUND**

On July 25, 2014, San Antonio Police Department officers, assigned to the Vice Unit, conducted an undercover operation targeting persons soliciting prostitutes in San Antonio, Bexar County, Texas. The operation was located in an area known for prostitution, and an undercover San Antonio police officer posed as a prostitute. The undercover officer was equipped with a microphone and all conversations could be heard by surveillance officers. At all times during the operation officers were positioned in vehicles within view of the undercover officer.

The exchange between the undercover officer and Aleman was recorded and witnessed by several officers. The undercover officer directed Aleman to a location around the corner. Aleman drove off, turned the corner, and was subsequently arrested by officers. On July 31, 2014, Aleman was charged by information with prostitution.

On August 10, 2015, the matter was called for trial. The jury heard testimony from four officers, including the undercover officer and Aleman. Much of officers' testimony focused on whether the undercover officer first approached Aleman's vehicle, or whether Aleman "signaled" the undercover officer over to his vehicle. The undercover officer testified that Aleman made "eye contact" with her and waved her over to his vehicle. Additionally, the jury viewed a video-recording, including audio, of the exchange between Aleman and the undercover officer. Aleman insisted the video-recording presented before the jury did not provide definitive evidence regarding the initial contact.

Although the exchange was short, approximately thirty seconds, the video-recording showed the undercover officer standing in the middle of South Sabinas Street, at Aleman's window, clearly engaged in conversation. The jury heard the following:

Undercover Officer:   Hey, you looking for a date?

Aleman:   How much?

Undercover Officer:   For a f\*\*k? Forty. You got forty bucks, forty dollars?

Aleman:   For a f\*\*k and a blow job?

Undercover Officer:   You got forty?

There was less than ten seconds of inaudible conversation and then the undercover officer confirms the following: "You wanna pick me up back there? OK? Forty dollars for a f\*\*k." Aleman's vehicle can then be seen turning right on Guadalupe Street as directed by the undercover officer.

The detectives coordinating the operation testified that undercover officers are provided strict instructions regarding their actions. According to the detectives, the undercover officer's exchange with Aleman, in this case, was no different. Once the undercover officer was confident Aleman committed the offense of prostitution, she instructed Aleman to meet her in the alley, approximately a block away. As Aleman drove off, his vehicle was kept under surveillance until a marked patrol unit initiated the traffic stop.

Aleman testified in his defense. He explained that he was leaving from a haircut and was heading to a local restaurant. "They've got a special lunch that I eat there on Tuesdays." During cross-examination, however, when the prosecutor explained July 25, 2014, was actually a Friday, Aleman insisted the lunch special was every day.

Aleman further testified the undercover officer approached his vehicle; he acknowledged he asked her "how much?" When asked to explain what he meant by "how much?", Aleman testified, "I guess, you know, [I] just asked." Aleman was adamant the undercover officer's first words were, "You want sex. You're looking for sex." However, after viewing the video, Aleman acknowledged the officer actually asked, "looking for a date?" Aleman explained, "Well, wouldn't that be the same?" He further contended he knew other officers were watching and that *he* did not believe he ever agreed to pay money in exchange for sex or knowingly agreed to

- 3 -

prostitution. Yet, Aleman acknowledged telling the undercover officer, "I'll meet you in the back, yeah, or whatever. I said whatever."

After both the State and defense rested and closed their cases, defense counsel requested an instruction on mistake of fact. The trial court denied the request. The jury returned a guilty verdict and, shortly thereafter, assessed punishment at 180 days in the Bexar County Jail, suspended and probated for a period of one year, and a fine in the amount of $1,500.00.

Aleman raises three issues on appeal: (1) the evidence was legally insufficient to support a conviction of prostitution; (2) the trial court erred in admitting speculative testimony in violation of the Texas Rules of Evidence; and (3) the trial court erred in refusing Aleman's request to include an instruction on mistake of fact in the court's charge to the jury.

We turn first to Aleman's contention the evidence is legally insufficient to support his conviction for prostitution.

### SUFFICIENCY OF THE EVIDENCE

**A.     Standard of Review**

In reviewing the legal sufficiency of the evidence, an appellate court determines whether, viewing "all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Hardy v. State*, 281 S.W.3d 414, 421 (Tex. Crim. App. 2009); *accord Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We defer to the jury's assessment of the credibility of the witnesses "and the weight to be given to their testimony." *Brooks*, 323 S.W.3d at 899; *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (reiterating appellate court's "role is not to become a thirteenth juror" and the court "may not re-evaluate the weight and credibility of the record evidence and thereby substitute

our judgment for that of the fact-finder"); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979) (stating "the jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony" except where provided otherwise by law). We are further instructed to be mindful of the jury's role "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Williams*, 235 S.W.3d at 750; *Jackson*, 443 U.S. at 319 (describing deference appellate courts show to jury's assessment of fact and evidence). In so doing, an appellate court presumes the jury "resolved the conflicts in favor of the prosecution and therefore defer to that determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

"Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction." *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Additionally, intent may "be inferred from circumstantial evidence such as acts, words, and the conduct of the" defendant. *Id*. at 50. The key question, for the reviewing court, is whether "the evidence presented actually supports a conclusion that the defendant committed the crime that was charged." *See Williams*, 235 S.W.3d at 750. Only upon a finding that the evidence is legally insufficient will this court reverse the trial court's judgment and order an acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41 (1982). This legal sufficiency standard applies equally to direct and circumstantial evidence. *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) (en banc).

**B.      Arguments of the Parties**

Aleman asserts the evidence is insufficient to prove he knowingly offered to engage in prostitution under section 43.02 of the Texas Penal Code. TEX. PENAL CODE ANN. 43.02(b).

Specifically, Aleman contends the video-recording was "at best, incomplete; at worst, it [was] inaccurate and misleading."

The State counters the jury alone resolves conflicts in the evidence and determines the credibility of the witnesses. Thus, although Aleman testified that he did not intend to make an agreement to exchange money for sex, the jury could have reasonably relied on other testimony to support each element of the charged offense.

**C.      Texas Penal Code section 43.02**

Aleman was charged with prostitution pursuant to section 43.02(b) of the Texas Penal Code. TEX. PENAL CODE ANN. 43.02(b). Section 43.02(b) provides as follows:

> (b)      A person commits an offense if, in return for receipt of a fee, the person knowingly:
>
>          . . . .
>
> (2)      solicits another in a public place to engage with the actor in sexual conduct for hire.

TEX. PENAL CODE ANN. 43.02(b)(2). "'Sexual conduct' includes deviate sexual intercourse, sexual contact, and sexual intercourse." TEX. PENAL CODE ANN. § 43.01(4) (West 2011). The State was, therefore, required to prove Aleman solicited the undercover officer, in a public place, to engage in sexual conduct in exchange for payment. *Id*. § 43.02(b)(2).

The facts of this case are similar to that of *Willis v. State*, No. 14-09-00041-CR, 2010 WL 1957031 (Tex. App.—Houston [14th Dist.] May 18, 2010, no pet.) (mem. op., not designated for publication). In *Willis*, the defendant approached an undercover officer, she quoted a price, and the defendant said, "Okay." *See id.* at *2; *see also Adetunji v. State*, 14-11-00778-CR, 2014 WL 766861, at *3 (Tex. App.—Houston [14th Dist.] Feb. 25, 2014, no pet.) (mem. op., not designated for publication). The undercover officer directed Willis "to drive around the block and she would meet him on the opposite corner." *Willis*, 2010 WL 1957031, at *2; *see also Anguiano v. State*,

774 S.W.2d 344, 347 (Tex. App.—Houston [14th Dist.] 1989, no pet.) (holding the jury could look to agreement of location as evidence that appellant agreed to sexual intercourse). Willis drove away, the undercover officer signaled surveillance, and the officers initiated a traffic stop. *Willis*, 2010 WL 1957031, at \*2. Although Willis testified and denied agreeing to any sexual acts or attempting to engage the undercover officer for sex in exchange for payment, the jury discredited his testimony and found him guilty of prostitution. *Id.* The appellate court affirmed the jury's verdict explaining that "the case essentially turned on the credibility of the witnesses," and the jury was free to believe the undercover officer's testimony over that of the defendant. *Id.*; *see also Nichols v. State*, 02-11-00356-CR, 2012 WL 5447941, at \*2–3 (Tex. App.—Fort Worth Nov. 8, 2012, pet. ref'd) (mem. op., not designated for publication).

Aleman essentially asks this court to find his testimony more credible than that of the four officers, including the undercover officer. Such determinations of credibility are left to the jury and will not be disturbed on appeal. *See Williams*, 235 S.W.3d at 750; *Ortiz v. State*, 93 S.W.3d 79, 87–88 (Tex. Crim. App. 2002) (reiterating appellate court may not substitute its determination for that of the jury). Here, Aleman's jury was free to believe the officers' testimony over that of Aleman. *See Willis*, 2010 WL 1957031, at \*2. The evidence reasonably supported the undercover officer asked Aleman if he was "looking for a date" and he responded by inquiring "how much." *See id.*; *Hardy*, 281 S.W.3d at 421. The evidence further supported that when the undercover officer told Aleman, "I'll meet you in the back," Aleman responded "yeah, or whatever." *See Nichols*, 2012 WL 5447941, at \*2 (finding jury could rationally infer defendant's responses of "yeah," "ok," and "yeah, get in" were acceptance of undercover officer's proposed price in exchange for sexual conduct).

Reviewing all of the evidence in the light most favorable to the jury verdict, including the officers' testimony and the video-recording, the jury could have found, beyond a reasonable doubt,

Aleman knowingly solicited the undercover officer, while in a public place, to engage in sex with him in exchange for payment. *See* TEX. PENAL CODE ANN. § 43.02(b)(2); *Hardy*, 281 S.W.3d at 421. We, therefore, overrule Aleman's first issue on appeal.

We turn next to Aleman's contention that the trial court erred in permitting speculative testimony before the jury.

ADMISSION OF SPECULATIVE TESTIMONY

**A.      Standard of Review**

We review a trial court's evidentiary rulings under an abuse of discretion standard. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). We will not disturb the ruling if it "was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case." *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007); *see also Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002) ("[T]he appellate court must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case.").

**B.      Arguments of the Parties**

Aleman contends the trial court allowed the officers to provide cumulative testimony that was speculative in nature. Aleman further argues the officers lacked personal knowledge about which they testified in violation of evidentiary Rule 602. *See* TEX. R. EVID. 602 (requiring witness have personal knowledge of the subject matter of the testimony). More specifically, Aleman contends that Detective Luis Guzman concluded Aleman was driving around the block, solely based on the officer's previous experience of individuals driving around the block prior to soliciting an undercover officer.

The State counters that Detective Guzman based his testimony upon his first hand-knowledge of the events that transpired, he explained his statements to the jury, and those statements were addressed on cross-examination.

**C.     Detective Guzman's Testimony**

Ultimately, Aleman's complaint turns on whether Detective Guzman possessed sufficient personal knowledge to testify regarding Aleman's actions. *See Pena v. State*, 441 S.W.3d 635, 644 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Detective Guzman testified, in his experience, many individuals do circle the block before soliciting or engaging in prostitution. Detective Guzman, could not, however, say definitively whether Aleman actually drove around this block in this particular case.

Defense counsel extensively cross-examined the officer. Detective Guzman testified he had a visual read on the undercover officer throughout the entire proceedings. *See Wright v. State*, 178 S.W.3d 905, 918–19 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (holding officer had personal knowledge of a number of key facts because he was present at the crime scene). As such, he had personal knowledge of the subject of his testimony. *See* TEX. R. EVID. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Whether the jury understood Detective Guzman's testimony as Aleman professes or as the State explains, the issue is ultimately in the sole purview of the jury. *See Williams*, 235 S.W.3d at 750; *Ortiz*, 93 S.W.3d at 87–88. The jury heard the testimony about which Aleman complains, and they were privy to his counsel's extensive cross-examination of Detective Guzman. The jury could also consider Detective Guzman's testimony that he was present at the scene and observed all interactions between the undercover officer and Aleman. *See Wright*, 178 S.W.3d at 918–19. We, therefore, conclude the jury could have understood Detective Guzman's testimony regarding

"circling the block" as an example of other perpetrators' previous activities and not specifically of Aleman's activities on the day in question.

Additionally, because the State's interpretation is within the zone of reasonable interpretation, we cannot say the trial court abused its discretion in allowing the officer's testimony. *See Powell*, 63 S.W.3d at 438 (Tex. Crim. App. 2001); *Willover*, 70 S.W.3d at 845. Accordingly, we overrule Aleman's second issue on appeal.

In his final issue on appeal, Aleman contends the trial court failed to include an instruction on mistake of fact in the court's charge to the jury.

### MISTAKE OF FACT INSTRUCTION

**A.     Arguments of the Parties**

Aleman contends the trial court erred in refusing to instruct the jury on mistake of fact. *See* TEX. PENAL CODE ANN. § 8.02 (West 2011). Specifically, he contends the trial court made its determination based on the credibility of the evidence and not on Aleman's right to the requested instruction.

The State counters that because Aleman never requested a mistake of fact instruction in the trial court's charge, the issue was not properly preserved. *See* TEX. R. APP. P. 33.1.

**B.     Preservation of Error**

Rule of Appellate Procedure Rule 33.1 provides as follows:

(a)     As a prerequisite to presenting a complaint for appellate review, the record must show that:

    (1)     the complaint was made to the trial court by a timely request, objection, or motion that:

        (A)     stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and

      (B)      complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure; and

    (2)     that the trial court:

      (A)      ruled on the request, objection, or motion, either expressly or implicitly; or

      (B)      refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

*See id.* To preserve error for appellate purposes, a party need only "let the trial judge know what he wants and why he thinks he is entitled to it and do so clearly enough for the judge to understand the request at a time when the trial court is in a proper position to do something about it." *Bedolla v. State*, 442 S.W.3d 313, 316 (Tex. Crim. App. 2014) (citing *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

After the completion of all of the evidence, and outside the presence of the jury, the trial court discussed the court's charge with both counsel.

> Let me announce on the record what I'm going to do before the defense put on a case, *it made the Court aware that it was going to request an 802 mistake of fact charge* in the jury. The Court has declined to include that. What the Court's going to do is *mark what was requested*. It's—and if I misstate this, [Defense Counsel], please, the bottom part of this page or what I'm going to mark as Court's Exhibit Number 1 and make it part of the record and leave it with the court reporter that was requested. *The Court understands what you're requesting*. The Court is going to deny, overrule the request so let no waiver be presumed or intended.

(emphasis added). The record clearly substantiates that (1) Aleman provided the trial court with a written request for jury instruction on mistake of fact, (2) the trial court understood that Aleman's requested instruction was based on section 802 of the Texas Penal Code, and (3) the trial court was on notice that Aleman was requesting an instruction on mistake of fact. Accordingly, we conclude Aleman properly preserved error; we, therefore, address the merits of Aleman's appellate issue. *See id.*

**C.      Standard of Review**

We review the trial court's denial of a requested jury instruction for an abuse of discretion. *See Segovia v. State*, 467 S.W.3d 545, 556 (Tex. App.—San Antonio 2015, pet. ref'd) (citing *Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000)).   In reviewing claims of jury charge error, we engage in a two-step process. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015); *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).   First, we determine whether the charge was erroneous, and if it was, we then determine whether the error was harmful. *Cortez*, 469 S.W.3d at 598; *Kirsch*, 357 S.W.3d at 649.   When error is preserved, "reversal is required if the error is 'calculated to injure the rights of defendant,' meaning there must be some harm."   *Segovia*, 467 S.W.3d at 556 (quoting TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006)); *see also Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009).

Additionally, for harm to result, the record must show "'actual, rather than merely theoretical, harm.'" *Sandoval*, 467 S.W.3d at 556 (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)).   An appellate court is further directed to consider "'the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.'"   *Id*. (quoting *Barron v. State*, 353 S.W.3d 879, 883 (Tex. Crim. App. 2011)); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787, 788 (Tex. Crim. App. 1988) (same).

**D.      Mistake of Fact Instruction**

Our first inquiry is whether the trial court erred in refusing to submit Aleman's requested instruction. *See Cortez*, 469 S.W.3d at 598; *Kirsch*, 357 S.W.3d at 649.

*1.    Defendant's Entitlement to a Mistake of Fact Instruction*

A defendant is entitled to a "requested instruction on every defensive issue raised by the evidence without regard to its source or strength, even if the evidence is contradicted or is not credible." *Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013); *see also Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012). "While the evidence may be weak or contradicted, there must be at least some evidence to support the defense as a rational alternative to the defendant's criminal liability." *Krajcovic*, 393 S.W.3d at 286. This rule is designed to ensure that the jury, not the judge, will decide the relative credibility of the evidence. *Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991) (en banc).

Mistake of fact "is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." TEX. PENAL CODE ANN. § 8.02. Section 1.07(a)(42) further defines a "reasonable belief" as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42). A defendant is only entitled to a mistake of fact instruction if there is some evidence, viewed in the light most favorable to the appellant, that negates the culpable mental state. *See Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001); *see also Reyes v. State*, 422 S.W.3d 18, 28 (Tex. App.—Waco 2013, pet. ref'd) (citing *Beggs v. State*, 597 S.W.2d 375, 377–78 (Tex. Crim. App. 1980)).

In the present case, Aleman testified on his own behalf. He testified that he asked the undercover officer "how much" because he was curious and not because he wanted to engage her services. Additionally, he explained he (1) never intended to meet her, (2) never intended to participate in prostitution, (3) never intended to agree on paying the undercover officer in exchange for sexual acts, and (4) never intended to have sex with the undercover officer. Aleman further contends he did not believe he made an agreement to have sex with the undercover officer in

exchange for money. Based on his assessment that the testimony substantiated he did not believe he was meeting the undercover officer, Aleman argues he was entitled to an instruction on mistake of fact.

Although Aleman testified he did not intend to have sex with the undercover officer, he acknowledged asking the undercover officer "how much" and that she responded that it would be $40.00. He further acknowledge telling her "I'll meet you in the back," the area in which the undercover officer had instructed him to meet. His requested defensive instruction is based solely on his testimony that he did not believe he "was agreeing to sex for money."

Aleman does not contend there was a mistake regarding whether the undercover officer offered him sex in exchange for $40.00. *Cf. Pena v. State*, 353 S.W.3d 797, 814 (Tex. Crim. App. 2011) (warranting mistake of fact instruction when defendant claimed he believed truckload of marijuana was really hemp to be used for crafts); *Sands v. State*, 64 S.W.3d 488, 493–95 (Tex. App.—Texarkana 2001, no pet.) (requiring mistake-of-fact instruction when defendant testified he thought syringe of methamphetamine contained vitamin B–12). Aleman also does not contend there was a mistake regarding whether the undercover officer directed Aleman where to meet her or that Aleman agreed to meet her there. *Cf. Granger v. State*, 3 S.W.3d 36, 38–39 (Tex. Crim. App. 1999) (justifying mistake of fact instruction when defendant testified he thought that the parked car at which he fired his gun at was unoccupied); *Loudermilk v. State*, 993 S.W.2d 382, 384–85 (Tex. App.—Eastland 1999, pet. ref'd) (requiring mistake-of-fact instruction when defendant and passenger testified they did not see the other car and they believed they were victims of "hit-and-run"). The mistake to which Aleman points is whether *he* intended to actually meet the officer and to pay her in exchange for sex.

Aleman testified that he did not intend to have sex with the officer and that he was only curious. Yet, the evidence does not raise a mistake as to whether Aleman inquired as to the price

- 14 -

for sex or whether he told the undercover officer he would meet her around the corner. *See Bagley v. State*, No. 08-00-00411-CR, 2002 WL 244831, at \*2–3 (Tex. App.—El Paso Feb. 21, 2001, pet. ref'd) (mem. op., not designated for publication) (finding defendant's belief the victim was sexually interested in him did not establish a basis for a mistake of fact defense).

Based on Aleman's testimony, and the testimony before the jury, we cannot say the trial court abused its discretion in denying Aleman's requested mistake of fact instruction.

## CONCLUSION

Having overruled each of Aleman's issues on appeal, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

PUBLISH