COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JASON LLABAN CANASTRA, | § | No. 08-23-00313-CR |
| Appellant, | § | Appeal from the |
| v. | § | 379th Judicial District Court |
| THE STATE OF TEXAS, | § | of Bexar County, Texas |
| Appellee. | § | (TC#2023CR5454) |

## MEMORANDUM OPINION

Appellant Jason Llaban Canastra pled guilty to delivering a controlled substance or marijuana to a child and was sentenced by the jury to ten years. Tex. Health & Safety Code Ann. § 481.122. He appeals, arguing that the testimony of the child's mother about the effect the drugs on the child was inadmissible for lack of personal knowledge.[1] For the reasons below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

J.W.[2] began using drugs when she ten years old; by the time she was 14 she was consistently running away from home. J.W. met Appellant in 2022, when she was 15 years old

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

[2] We use initials to protect the complainant's identity.

and he was 39, and he began giving and selling methamphetamines and marijuana to her. On August 28, 2022, after being with Appellant, J.W. texted her mother, Nicole, asking for her to make an appointment with the gynecologist because her vagina was swollen, bleeding, and bruised. After J.W. discussed the incident with her recovery coach, and he called the police, Appellant was arrested.

Appellant was charged with three counts: aggravated sexual assault of a child, sexual assault of a child, and delivering marijuana and/or methamphetamine to a child. At the beginning of trial, Appellant pled guilty to the third count, and trial proceeded on the sexual offense counts.

At trial, J.W. testified about her drug use in general. As for the August incident, J.W. testified to using methamphetamines and ecstasy (which she referred to as molly) and then going to Appellant's house where they drank shots. She said that after that, "the drugs at once kind of hit [her]" and she was "kind of not aware of what was going on . . . ." Although she remembered being naked and having oral sex, she did not remember if Appellant penetrated her.

A video of Appellant's police interview after his arrest was also shown to the jury. In that interview, Appellant admitted to using drugs with J.W. and kissing her but denied knowing that she was under 18 and denied ever having sex with her.

After the close of the State's evidence, the trial court granted a directed verdict on counts one and two because there was no evidence of penetration by Appellant's sexual organ, as alleged in the indictment. The jury, however, was instructed on the lesser included offenses of attempted aggravated sexual assault of a child, attempted sexual assault of a child, and indecency with a child by exposure. The jury returned a not guilty verdict on all counts, except count three to which Appellant had pled guilty.

2

The jury then proceeded to the punishment phase. The jury heard from J.W.'s mother, Nicole. Appellant's sole issue on appeal complains about this single question and answer in that testimony:

> Q: And so, specifically, how has . . . methamphetamine and the delivery of methamphetamines affected [J.W.] and how did it affect her in this particular instance?
>
> A: She was . . .
>
> [Defense counsel]: Judge, I'm going to object to speculation.
>
> THE COURT: I'm going to overrule that.
>
> A: She was seeking drugs. And when she was seeking the drugs, she went and got the drugs. And then doing so, it–it put her in a situation to where she could then further get taken advantage of. Yeah, she wanted something. It was provided. It was provided.

Other punishment phase evidence included an audio recording of a call between Appellant and his girlfriend while he was in jail awaiting trial. In the call, Appellant told his girlfriend that when he was arrested, he had 14 grams of "ice" (crystal meth) and his drugs were in his son's backpack. Until Appellant's mother found the drugs, his son was taking them to school every day. The jury sentenced Appellant to ten years and recommended that he not be placed on community supervision.

## STANDARD OF REVIEW AND APPLICABLE LAW

Appellant's sole issue on appeal is whether the trial court abused its discretion in overruling his "speculation" objection to Nicole's testimony about the effect of drugs on J.W. An objection to speculation is essentially an objection to the witness's lack of personal knowledge under rule of evidence 602. *Aleman v. State*, 497 S.W.3d 518, 524 (Tex. App.—San Antonio 2016, no pet.). Appellant expands that argument to also claim that this testimony violates rule of evidence 701

3

(opinion testimony by lay witnesses) because Nicole did not have personal knowledge required to offer an opinion. Although lay opinions have a personal knowledge component, an objection to speculation does not preserve a complaint about opinion testimony. Tex. R. App. P. 33.1; *Liller v. State*, No. 08-15-00125-CR, 2018 WL 1959679, at \*4 (Tex. App.—El Paso Apr. 26, 2018, pet. ref'd) (not designated for publication); *Adell v. State*, No. 01-21-00439-CR, 2023 WL 4938111, at \*56 (Tex. App.—Houston [1st Dist.] Aug. 3, 2023, pet. ref'd) (mem. op., not designated for publication). Therefore, Appellant only preserved his complaint for lack of personal knowledge under Rule 602.

We review a trial court's ruling admitting evidence under an abuse of discretion standard. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). "A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement." *Id.*

## ANALYSIS

### A. Admissibility of Nicole's testimony

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Tex. R. Evid. 602. Even though the testimony at issue came during the punishment phase, we examine the entire record to determine if personal knowledge was established. *Yohey v. State*, 801 S.W.2d 232, 242 (Tex. App.—San Antonio 1990, pet. ref'd) ("At the penalty stage, a jury may consider all the evidence adduced at the guilt stage.") (*citing Stoker v. State*, 788 S.W.2d 1, 7 (Tex. Crim. App. 1989); *Santana v. State*, 714 S.W.2d 1, 8 (Tex. Crim. App. 1986).

In the guilt and innocence phase, Nicole, who raised J.W., testified about J.W.'s childhood and the changes in her behavior once she began using drugs. She stated that J.W. began sneaking out of the house and running away when she was 14 years old. When J.W. was home, she would

4

be "erratic," "not hungry," would "crash and sleep for days," and wake up angry. Even when J.W. was not home, Nicole had personal knowledge of J.W.'s behavior's because she would text and post on social media in the middle of the night. She also saw videos of J.W. using drugs on her phone. When J.W. came back home in August 2022, she was "defeated" and "depressed." This testimony is sufficient evidence that Nicole had personal knowledge of how methamphetamine use affected J.W. in general.

Appellant argues that Nicole did not have "personal knowledge about whether JW was further taken advantage of due to Appellant delivering drugs to her." But that was not Nicole's testimony. Nicole stated that J.W.'s determination to get drugs when she wanted them "*put her in a situation* to where she *could then* further get taken advantage of." This one answer must be read in context with the rest of her testimony. Immediately before this exchange Nicole stated, without objection, that J.W. was not getting money from her to buy drugs and was instead relying on men to give drugs to her. In this context, Nicole's testimony was not that J.W. had been taken advantage of because Appellant gave her drugs, but that by relying on other people to give drugs to her, she was vulnerable. At most, it is Nicole's opinion about the risks of J.W.'s drug-seeking and, as stated above, Appellant did not object and preserve a complaint on these grounds.

We hold that the trial court's evidentiary ruling was not outside the "zone of reasonable disagreement" and was not an abuse of discretion.

## B. Harm analysis

Even if it were error to allow Nicole's testimony about the affect of methamphetamines on J.W., that error would be harmless. Error in admitting evidence is nonconstitutional error that "must be disregarded" unless it affects Appellant's "substantial rights." Tex. R. App. P. 44.2(b); *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). Admission of evidence will only

5

affect substantial rights "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

Appellant argues that his substantial rights were affected because Nicole's testimony "provided evidence that J.W. was taken advantage of sexually." But, during the guilt stage of the trial, the jury heard evidence that was much more damning than Nicole's testimony that J.W. could be taken advantage of because of her desire to obtain drugs. For example, J.W. testified that Appellant gave her shots after she had already used methamphetamines and taken ecstasy. She stated that she was hardly coherent, but remembered that she was naked, that Appellant was performing oral sex, and that she felt pain. Despite the jury's not guilty verdicts, it is possible that the jurors believed J.W.'s testimony, but that they did not find that it met the elements of attempted sexual assault (which requires an attempt to penetrate) or indecency with a child (which requires exposure). Since evidence of J.W.'s sexual vulnerability besides Nicole's testimony was admitted without objection, Nicole's testimony was harmless. *Williams v. State*, 273 S.W.3d 200, 227 (Tex. Crim. App. 2008) (noting in a harm analysis that much of the erroneously admitted testimony during the punishment phase was heard during the guilt phase of trial).

When conducting a harm analysis, we also take into consideration the nature of the evidence supporting the verdict. *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001). In this case, the jury's punishment verdict could have been based on other evidence. Regardless of whether J.W. was taken advantage of, Appellant pled guilty of delivering a controlled substance or marijuana to a child and J.W. testified that the substance was methamphetamine. The jury also heard evidence that Appellant endangered his own son as well as other children at his son's school by putting methamphetamine in his son's backpack.

Even if the trial court erred in admitting the objected-to portion of Nicole's testimony, that testimony would not have influenced the jury to give a longer sentence than they otherwise would have.

## CONCLUSION

The trial court did not abuse its discretion in allowing testimony that drug use put J.W. in a situation where she could be taken advantage of. We affirm.

JEFF ALLEY, Chief Justice

May 20, 2024

Before Alley, C.J., Palafox, and Soto, JJ.

(Do Not Publish)**]**

7