# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00508-CR

---

**Daniel Keith Smith, Sr., Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 424TH DISTRICT COURT OF BURNET COUNTY
### NO. 53789, THE HONORABLE EVAN C. STUBBS, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Daniel Keith Smith pleaded guilty to the offense of murder. *See* Tex. Penal Code § 19.02. Following a hearing on punishment at which Smith raised and the jury rejected the defense of sudden passion, the jury assessed punishment at life imprisonment, and the district court sentenced Smith in accordance with that verdict. In a single issue on appeal, Smith asserts that the evidence is insufficient to support the jury's rejection of his sudden-passion defense. We will affirm the district court's judgment.

## BACKGROUND

Smith pleaded guilty to intentionally and knowingly causing the death of John Hawkins by stabbing or cutting him with a knife. The evidence presented at the punishment hearing showed that Hawkins had an affair with Smith's wife, Lara, and that Hawkins and Lara worked together at the restaurant where the stabbing occurred.

Armando Perez, the general manager of the restaurant, testified that approximately two weeks before Smith stabbed Hawkins, Smith "came into the restaurant causing a big commotion about wanting to see his wife." Perez called the police, who arrived at the restaurant and confronted Smith, who told them that Lara was having an affair. One of the officers was wearing a body camera that recorded Smith's conversation, and on the recording, he could be heard telling the officer,

> She needs to come home. She ain't coming back here doing the shit she's doing with this fry cook. I mean, this is just . . . this ain't the first time. . . . I've had it. . . . I wanted to talk to her. She wants to stay here and work, and avoid it. . . . Lucky I didn't come up here and just take that fry cook out. Many men would do that.

The police issued Smith a criminal trespass warning and told him that if he returned to the restaurant he would go to jail, but in the next two weeks, Perez saw Smith drive around the restaurant, park across the street, and "watch." Smith also went to Hawkins's residence, where Lara was staying at the time, and the police issued him another criminal trespass warning.

Additionally, in the days leading up to the attack, Smith sent Lara hundreds of Facebook messages, including some that threatened violence. Copies of the messages were admitted into evidence and included the following:

> "You tormented me on your way home from work last night. Today is my turn to torment you . . . Run, little rabbit, run."

> "You must not really give a shit about that man because you about to get him gutted."

> "See you later but it won't be good."

2

"I'm sorry but I cannot allow you to have another Tuesday with John."

"Don't make me fucking kill John just to fucking get you home with me."

"I don't care if they take me to jail. I don't give a fuck what they'll do. I'll chase you down today. . . . I'll run you the fuck off the road. I'm going to talk to you."

"Go ahead and keep playing head games with me . . . you're going to cause me to kill more than myself . . . you're going to fucking go[,] John is going to go . . . ."

"I'm upset and I'm going to do some stupid you want to see me dead you want to see John dead you want to be dead yourself . . . ."

"[S]omething bad's going to happen you keep playing these games . . . I ain't got nothing to lose . . . what are they going to do throw me in fucking prison for the next five years till I'm dead I don't care maybe they'll kill me right on the spot I don't give a fuck just fucking tell me the truth before it turns bad . . . ."

"You're a dumb mother fucker. You're going to get a lot of people hurt."

"Go ahead and don't text me. You're just playing with my life, your life. Everybody's life is in danger because of you and everybody will know . . . ."

The stabbing occurred on May 8, 2022. According to a statement that Smith gave to the police following his arrest, he went to the restaurant that morning, parked across the street, and waited two hours for Lara to arrive. In his car, Smith had roses, a pink card with Lara's name on it, and a balloon that said, "Happy Mother's Day." Smith told the police that he had intended to give these items to Lara when she arrived.

Surveillance video taken from the restaurant's outdoor security camera showed that Hawkins and Lara arrived at the restaurant together that morning. Hawkins dropped off Lara, parked his truck, and then went inside the restaurant. A few minutes later, he returned to

3

his truck, headed back to the restaurant, and encountered Smith outside. Smith asked to speak to Lara, and Hawkins told Smith twice, "She don't want to." Approximately 30 seconds later, Hawkins told Smith, "Leave right now, or I'm going to call the cops." At that point, Smith approached Hawkins rapidly, took out a large dagger, and yelled at him, "You're going to fuck with another man's wife? Huh? Huh?" Hawkins, who was unarmed, attempted to retreat as Smith lunged at him with the knife, and the men left the view of the camera, but Hawkins could be heard screaming in pain as Smith could be heard stabbing him multiple times.

Smith then went inside the restaurant, attempting to find Lara. Hawkins followed Smith inside, screaming for help. Perez heard the screaming and ran to the kitchen, where he saw Hawkins and Smith engaged in a fight. Surveillance video taken from the restaurant's indoor security camera showed Smith grabbing Hawkins in the kitchen and stabbing him again. Perez testified that there was a garden hoe on the ground nearby that Hawkins had been using to fight Smith. Perez told Lara to run, and she ran out the back door, as Perez grabbed the garden hoe and attempted to defend Hawkins from Smith, who had Hawkins in a chokehold. Smith let go of Hawkins and pursued Lara out the door.

As Lara ran across the restaurant parking lot, she encountered Perez's son Nicholas, who had just arrived in his car. Lara got inside Nicholas's car and told him what had happened. Nicholas then saw Smith "aggressively" walking toward his car with a knife in his right hand, which was "full of blood." Nicholas testified that as he attempted to evade Smith, Smith tried to hit his car with the knife and slammed his hand "really hard" into his driver's side window. Shortly thereafter, police arrived at the restaurant and apprehended Smith.

Hawkins and Smith, who had also been injured during the incident, were transported to the same hospital. A paramedic who transported Hawkins to the hospital testified

4

that as he was wheeling Hawkins into the emergency room, he overheard Smith saying, "I hope that that fucker dies." Hawkins sustained multiple stab wounds to his chest and back and later died from complications arising from his injuries.

In a statement that Smith made to police following his arrest, he told officers that after Hawkins refused to let him speak with Lara, "everything happened so fast." Smith "walked back to [his] truck," "grabbed [his] knife out of the center console," and went back to "see [his] wife" so that he could "tell her to come get her flowers and stuff." Smith claimed that he grabbed the dagger "only to scare people away" so that he could talk to Lara. He stated that he did not intend to harm Hawkins. Instead, "the poor guy just got in my way, man." Smith also blamed Lara for what happened, telling the officers, "[A]ll she had to do was take the flowers and the card and none of this would have happened. I'd have drove home. I would have waited for her to call me, just like I always do."

At the conclusion of the punishment hearing, Smith requested and received a jury instruction on sudden passion. The jury found that Smith failed to prove sudden passion and assessed punishment at life imprisonment and a $10,000 fine. The district court rendered judgment on the verdict as noted above. This appeal followed.

## GOVERNING LAW AND STANDARD OF REVIEW

A person commits the offense of murder if he "intentionally or knowingly causes the death of an individual." Tex. Penal Code § 19.02(b)(1). Ordinarily, murder is a first-degree felony. *Id*. § 19.02(c). However, at the punishment stage of a trial, the defendant may raise the issue of sudden passion. *Id*. § 19.02(d). "If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." *Id*.

We do not apply the constitutional sufficiency standard to defensive issues, such as sudden passion, that the defendant must prove by a preponderance of the evidence. *See Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Moncivais v. State*, 425 S.W.3d 403, 407 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Instead, we apply the "traditional Texas civil burdens of proof and standards of review," *Matlock*, 392 S.W.3d at 667, which include challenges to both the legal and factual sufficiency of the evidence, *see id.* at 670-71; *see also Petetan v. State*, 622 S.W.3d 321, 357 (Tex. Crim. App. 2021).

"The civil legal sufficiency standard requires a two-step analysis." *Moncivais*, 425 S.W.3d at 407. "First, we examine the record for any evidence that supports the jury's negative finding while ignoring all evidence to the contrary." *Id.* "Second, if no evidence supports the negative finding, then we examine the entire record to determine whether the evidence establishes the [defensive issue] as a matter of law." *Id.* "We must defer to the fact finder's determination of the weight and credibility to give the testimony and the evidence at trial." *Id.*

For factual sufficiency, "an appellate court views the entirety of the evidence in a neutral light" and determines whether the jury's verdict "is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased." *Matlock*, 392 S.W.3d at 671. As with legal sufficiency, the reviewing court "may not usurp the function of the jury by substituting its judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony." *Id.*

To prove that he acted with "sudden passion," the defendant must prove by a preponderance of the evidence that he caused the person's death "under the immediate influence

of sudden passion arising from an adequate cause." Tex. Penal Code § 19.02(d). "'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.01(a)(1). "[A]dequate cause is determined by applying the 'person of ordinary temper' standard, which is the same as the reasonable person standard." *Segovia v. State*, 467 S.W.3d 545, 557 (Tex. App.—San Antonio 2015, pet. ref'd) (quoting *Gonzales v. State*, 689 S.W.2d 900, 903 (Tex. Crim. App. 1985)).

"'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." Tex. Penal Code § 19.01(a)(2). "[S]udden passion is essentially a culpable mental state." *Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998). "Mental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs." *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991).

"Sudden passion must arise at the time of the offense and cannot result solely from former provocation." *Moncivais*, 425 S.W.3d at 407. "A defendant must prove that the homicide occurred while the passion still existed and before there was reasonable opportunity for the passion to cool." *Id.* "Anticipation of an event and preparation of a response indicates a defendant had time to deliberate over an action and did not act under the immediate influence of sudden passion." *Id.* "Moreover, neither ordinary fear nor anger alone is sufficient to establish sudden passion." *De Leon v. State*, 373 S.W.3d 644, 650 (Tex. App.—San Antonio 2012, pet. ref'd). "Similarly, a defendant may not rely on a cause of his own making to support a claim for sudden passion." *Id.*

7

## DISCUSSION

In his sole issue on appeal, Smith asserts that the evidence is insufficient to support the jury's negative finding on sudden passion.[1] Specifically, Smith points to evidence in the record showing that in his car, he had Mother's Day gifts for Lara, which he contends proves that he arrived at the restaurant "not with a malicious intent." He also asserts that there was evidence showing that Hawkins and Smith "were in the midst of a physical altercation" inside the restaurant, which in Smith's view demonstrates that he did not go to the restaurant "with the intent to commit a homicide," and that Smith's actions in stabbing Hawkins "were done in response to being struck" first by Hawkins with a garden hoe. Smith contends that "the cumulative effect" of "seeing the person his wife was having an affair with," "being attacked by that person with a garden hoe," and "being in a melee with that person" inside the restaurant would support a finding that "the degree of anger, rage, or resentment" in Smith was of such a level that rendered him "incapable of cool reflection."

However, as the State correctly observes, the relevant inquiry for legal sufficiency is not whether the record contains evidence to support a finding of sudden passion but whether it contains "any evidence that supports the jury's negative finding" on sudden passion, "while

---

[1] Smith does not specify whether he is raising a legal or factual sufficiency challenge to the evidence. When a defendant fails to specify "whether his challenge is to the legal sufficiency, the factual sufficiency, or both," appellate courts "look to the argument and authorities presented in the brief" as well as "the relief requested" to determine "whether an issue challenges the legal or factual sufficiency of the evidence or both." *Rischer v. State*, 85 S.W.3d 839, 842-43 (Tex. App.—Waco 2002, no pet.). "Otherwise, we will construe a general sufficiency challenge as a challenge to only the legal sufficiency of the evidence." *Id*. at 843. In his brief, although Smith refers to authorities that address the legal sufficiency of the evidence, he asks only for a new trial, which is the relief requested for a factual-sufficiency challenge. In the interest of justice, we will address both the legal and factual sufficiency of the evidence.

8

ignoring all evidence to the contrary." *See Moncivais*, 425 S.W.3d at 407. In this case, the evidence supporting the jury's negative finding on sudden passion includes the following:

- Smith knew about Lara's relationship with Hawkins approximately two weeks before he stabbed Hawkins, which supports a finding that the stabbing was in response to former provocation.

- When Smith was issued a criminal trespass warning at the restaurant, he made a statement to the police that they were lucky he "didn't come up here and just take that fry cook out," which supports a finding that Smith had already considered killing Hawkins before the day of the attack.

- Smith also was issued a criminal trespass warning at Hawkins's residence, which supports a finding that Smith was already targeting Hawkins days before the stabbing.

- In the days leading up to the attack, Smith sent multiple messages to Lara that threatened violence toward Hawkins, which supports a finding that Smith intended to harm Hawkins when he arrived at the restaurant.

- Smith waited in a nearby parking lot for approximately two hours before Hawkins and Lara arrived at the restaurant, which supports a finding that Smith's attack was premeditated.

- In addition to the Mother's Day gifts that Smith brought with him to the restaurant, he also had a dagger with him, which supports a finding that Smith had prepared to stab Hawkins that day.

- After Hawkins told Smith that Lara did not want to speak with him, Smith returned to his truck to retrieve his dagger, which supports a finding that Smith deliberated before attacking Hawkins.

We conclude that the above evidence is legally sufficient to support the jury's negative finding on sudden passion. *See Hayes v. State*, 85 S.W.3d 809, 814 (Tex. Crim. App. 2002) (concluding that jury was not required to accept defendant's contention that killing wife after learning of her

9

alleged affair was "crime of passion" when State presented evidence that defendant knew of affair in week preceding murder and defendant had "a significant 'cooling off' period from the initial shock"); *Benitez-Benitez v. State*, No. 03-18-00191-CR, 2018 WL 6425015, at \*8 (Tex. App.—Austin Dec. 7, 2018, no pet.) (mem. op., not designated for publication) (concluding that evidence was sufficient to reject sudden-passion defense, including evidence that defendant went to vehicle to retrieve weapon before shooting victim).

We also conclude that the evidence is factually sufficient. The circumstances immediately preceding the attack provide some evidence of sudden passion. Smith attacked Hawkins approximately 30 seconds after Hawkins had told Smith that his wife did not want to talk to him, after Smith had been waiting to talk to his wife for approximately two hours in the parking lot. The jury could have found that Smith's being told by the man with whom his wife was having an affair that he could not speak with his wife, after that man and Smith's wife had arrived at the restaurant together that morning, could produce a degree of anger in a person of ordinary temper sufficient to render the mind incapable of cool reflection. However, we cannot say that the jury's finding to the contrary "is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased," particularly considering the other evidence summarized above tending to show that the attack was premeditated.

We overrule Smith's sole issue.

**CONCLUSION**

We affirm the district court's judgment of conviction.

_____

Gisela D. Triana, Justice

10

Before Justices Baker, Triana, and Kelly

Affirmed

Filed:   August 28, 2024

Do Not Publish